**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - -- - - - - - - - - - - - - - - - - - - x
                                                        :
In re:                                  :        Chapter 11
                                                        :
Charter School Capital, Inc.,[1]        :        Case No. 25-11016 (CTG)
                                                        :
          Debtor.                       :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF BRIAN AYERS IN SUPPORT OF
DEBTOR'S MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING
BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF
THE DEBTOR'S ASSETS, (B) AUTHORIZING THE DEBTOR TO DESIGNATE ONE
OR MORE STALKING HORSE BIDDERS AND TO PROVIDE BID PROTECTIONS,
(C) SCHEDULING AN AUCTION AND APPROVING THE FORM AND MANNER OF
NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT
PROCEDURES, (E) SCHEDULING A SALE HEARING AND APPROVING THE FORM
AND MANNER OF NOTICE THEREOF AND (F) GRANTING RELATED RELIEF;
AND (II)(A) APPROVING SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) APPROVING THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

I, Brian Ayers, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am a Managing Director of Rock Creek Advisors, LLC ("Rock Creek" or the "Firm"), which has an office at 1738 Belmar Blvd., Belmar, New Jersey 07719.  I submit this declaration ("Declaration") on behalf of Rock Creek and in support of the *Debtor's Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (B) Authorizing the Debtor to Designate One or More Stalking Horse Bidders and to Provide Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner*

---

[1] The Debtor's mailing address is 9450 SW Gemini Dr., PMB 559064, Beaverton, OR, 97008-7105, and the last four digits of the Debtor's federal tax identification number are 4278.

*of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale*

*Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief;*

*and (II)(A) Approving Sale of the Debtor's Assets Free and Clear of Liens, Claims, Interests, and*

*Encumbrances, (B) Approving the Assumption and Assignment of Certain Executory Contracts*

*and Unexpired Leases, and (C) Granting Related Relief* (the "Motion") filed contemporaneously

herewith.[2]

2.      Except as otherwise indicated, all statements in this Declaration are based on my

personal knowledge of the Debtor's operations and finances gleaned during the course of Rock

Creek's engagement, my discussions with the Debtor's senior management, other members of the

Rock Creek team, and the Debtor's other advisors, as well as my review of relevant documents or

my opinion based on my experience and knowledge of the Debtor's operations and financial

condition.  If called to testify, I would testify to each of the facts set forth herein based on such

personal knowledge, discussions, review of documents, or opinion.

**Background and Qualifications**

3.      I have more than twenty (20) years of experience advising businesses facing

operational and/or financial challenges, including companies in bankruptcy proceedings.  I

personally have assisted with over thirty (30) transactions involving the sale, private placement,

or financial restructuring of middle market companies in North America and Europe.

4.      In 1994, I received a Bachelor of Arts in Economics from Syracuse University.

Additionally, I am a Certified Insolvency and Restructuring Advisor and a Certified Turnaround

Professional.

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

5.      Rock Creek is a financial services firm that works with companies and their investors, shareholders, directors, lenders and other relevant constituents to help companies maximize their true potential.  Rock Creek has expertise in turnarounds, assignments for the benefit of creditors, financial advisory services, and liquidations.

6.      Rock Creek's professionals have extensive experience in complex financial restructurings.  Rock Creek has served as a sales agent for debtors and other parties in many bankruptcy cases in the throughout the United States, including: Notably, Rock Creek's professionals have acted as the financial advisors or sales agents in:  *In re Kologik, LLC*, Case No. 24-10311 (Bankr. M.D. La. April 25, 2024); *In re 8e14 Networks, Inc. d/b/a Ananda Networks*, Case No. 22-10708 (Bankr. D. Del. September 6, 2022 ) (BLS); *In re Retrotope*, Case No. 22-10228 (Bankr. D. Del. May 13, 2022) (JTD); *In re Tix Corp.*, Case No. 21-14170 (Bankr. D. Nev. Aug. 24, 2021); *In re VTES, Inc., et al.*, No. 20-12941 (JLG) (Bankr. S.D.N.Y. Feb. 24, 2021); *In re Barfly Ventures, LLC*, Case No. 20-01947 (JWB) (Bankr. W.D. Mich. June 6, 2020); *In re NinePoint Medical, Inc.*, Case No. 20-12618 (KBO) (Bankr. D. Del. Oct 16, 2020); *In re JRV Group USA L.P.*, Case No. 19-11095 (CSS) (Bankr. D. Del. May 12, 2019); *In re Sedgwick LLP*, Case No. 18-31087 (HLB) (Bankr. N.D. Cal. Oct. 2, 2018).

**Rock Creek's Retention**

7.      On June 3, 2025, the Debtor retained Rock Creek as sales agent to, among other things: (i) identify and evaluate potential counterparties for a potential sale process, (ii) prepare a marketing plan and information materials to distribute to potential buyers on a confidential basis, (iii) solicit third-party interest in an acquisition of the Debtor's assets, (iv) review the debtor in possession financing facility for reasonableness, and investigate alternative sources of funding, and (v) assist the Debtor in contacting potential buyers, arranging meetings with potential buyers,

and coordinating due diligence.  During its engagement, Rock Creek has worked closely with the Debtor's management and other restructuring professionals and has become knowledgeable and familiar with the Debtor's capital structure, liquidity needs, and business operations.

**Marketing and Sale Process**

8.     Since 2022, the Debtor has engaged in efforts to sell the properties in its portfolio in order to generate liquidity.  In connection with that process, the Debtor has worked with reputable real estate brokerage firms Colliers and CBRE.  The Debtor has also worked with well-known investment bankers, including, Raymond James, Morgan Stanley, and AON, to assist with marketing the properties to potential interested buyers and raising additional outside equity financing.  These efforts also targeted key strategic partners who have access to: (i) municipal bond financings through large financial institutions; and (ii) global investment funds. Notwithstanding the Debtor's liquidity constraints, there has been interest by third parties acquiring some or all of the Debtor's operations.  There have also been active discussions with multiple interested parties regarding a going concern sale transaction and stalking horse bids.

9.     In April 2025, as a result of Debtor's efforts, the Debtor received a proposal from a potential strategic acquirer for 100% of the stock and all related securities of the Debtor (the "Potential Acquiror").  The proposal would provide meaningful value to the Debtor's enterprise, including to Orthogon.  In late May, following additional diligence, the Potential Acquiror provided a revised proposal that contemplated a section 363 bankruptcy sale.  As of the Petition Date, the Debtor was in discussions with the Potential Acquiror to serve as a stalking horse purchaser in this Chapter 11 Case.

10.     Subject to the oversight of the Debtor's independent directors, and with the assistance of Rock Creek and the Debtor's other advisors, the Debtor intends to commence a robust, formal postpetition marketing process aimed at soliciting bids for a Sale transaction.  Since

the engagement, the professionals at Rock Creek have worked with the Debtor and its other advisors to prepare for the sale process.  This includes, among other things, drafting a teaser and other marketing materials, establishing a virtual data room, and preparing a form non-disclosure agreement to be ready to immediately commence the postpetition marketing of the Assets, while the Debtor seeks approval of the Bidding Procedures in parallel.  Rock Creek is poised to immediately commence its postpetition marketing efforts.  In addition, Rock Creek has begun an initial outreach to potential strategic and financial buyers and intends to contact over 200 parties, including strategic and financial buyers, that are reasonably likely to be interested in consummating a proposed Sale.

11.    Based on my experience, the time periods set forth in the Bidding Procedures Order and Bidding Procedures are reasonable and will provide all potential bidders with sufficient time and information to submit a bid for the Assets and do not prejudice parties in interest under the facts and circumstances of this Chapter 11 Case, including (i) the Debtor's dwindling liquidity and (ii) the Debtor's prepetition marketing efforts.  In formulating the procedures and time periods set forth therein, the Debtor balanced the need to provide adequate and appropriate notice to parties in interest and potential bidders with the need to quickly and efficiently run a sale process.

12.    Under the proposed timeline, there will be thirty-eight (38) days between the Petition Date and the Bid Deadline.  I believe this period will provide parties with sufficient time, given the Debtor's limited liquidity and prepetition marketing, to formulate bids to purchase the Assets.  Further, extensive information regarding the Assets will be made available to Prospective Bidders in a virtual data room upon the execution of confidentiality agreements.  Accordingly, parties that may have an interest in bidding will have adequate time before the Bid Deadline to

conduct diligence and evaluate the Debtor's Assets so that they will not be bidding in a vacuum and can formulate a Bid on an informed basis.

13.     I believe the marketing and sale process contemplated by the Debtor is in the best interests of the Debtor's estate, will establish whether and to what extent a market exists for the Assets, and provides interested parties with sufficient opportunity to participate.  Accordingly, I believe that the Debtor's estate would be best served by approval of the Bidding Procedures Order.

## Need For a Timely Process

14.     Based on my twenty (20) years of experience in the financial advisory and restructuring industry, including representing debtors or other parties in interest in connection with postpetition marketing and sale processes in chapter 11 cases, I believe that potential bidders are more likely to seriously pursue a sale transaction knowing that a bankruptcy court has approved a sale and marketing process and related bidding procedures.

15.     Accordingly, I believe that approval of the Bidding Procedures sooner, rather than later, will increase the amount of time the Debtor can meaningfully engage potential bidders.  I believe that longer engagement will result in greater due diligence and a higher likelihood that the Debtor will receive one or more Qualified Bids.  As a result, I believe approval of the Bidding Procedures on the timeline requested by the Debtor is more likely to lead to a sale transaction that maximizes the value of the Assets for the benefit of the Debtor's estate by generating earlier interest in the Assets.

16.     Moreover, the facts and circumstances of this Chapter 11 Case require that the Debtor run an expedited, but robust, sale process.  It is my understanding that the Debtor does not have liquidity to support a protracted sale process and without access to additional liquidity, the Debtor will be unable to support the ongoing sale process.  Speed and certainty are critical here, especially because the Debtor simply does not have liquidity to support a protracted sale process.

17.     Thus, pursuing the Sale in the manner and within the time periods prescribed in the Bidding Procedures is in the best interest of the Debtor's estate and will provide interested parties with sufficient opportunity to participate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: June 11, 2025

By:
 */s/ Brian Ayers*
Name: Brian Ayers
Title:   Managing Director

*Proposed Financial Advisor and Sales Agent to the Debtor and Debtor in Possession*