**<u>EXHIBIT A</u>**

**Revised Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                             :

In re:                                   :        Chapter 11
                                             :

Charter School Capital, Inc.,[1]       :        Case No. 25-11016 (CTG)
                                             :

        Debtor.                    :
                                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x     **Re: Docket No. 32**

**ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE**
**OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (II) AUTHORIZING**
**THE DEBTOR TO DESIGNATE ONE OR MORE STALKING HORSE BIDDERS**
**AND TO PROVIDE BID PROTECTIONS, (III) SCHEDULING AN AUCTION AND**
**APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) APPROVING**
**ASSUMPTION AND ASSIGNMENT PROCEDURES, (V) SCHEDULING A**
**SALE HEARING AND APPROVING THE FORM AND MANNER OF**
**<u>NOTICE THEREOF, AND (VI) GRANTING RELATED RELIEF</u>**

Upon consideration of the Motion[2] filed by the debtor and debtor in possession (the "<u>Debtor</u>") in the above-captioned chapter 11 case; and the Court having reviewed the Motion, the First Day Declaration and the Ayers Declaration; and the Court having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (if any) to consider certain of the relief requested in the Motion (the "<u>Bidding Procedures Hearing</u>"); and after due deliberation, this Court having determined that the legal and factual bases set forth in the Motion, the First Day Declaration, and the Ayers Declaration, establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, and its creditors, and the Debtor having demonstrated good, sufficient, and sound business justifications for the relief granted herein;

---

[1] The Debtor's mailing address is 9450 SW Gemini Dr., PMB 559064, Beaverton, OR, 97008-7105, and the last four digits of the Debtor's federal tax identification number are 4278.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion.

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.       Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.       Notice of the Motion and the Bidding Procedures Hearing complied with all applicable requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules. Accordingly, no other or further notice of the Motion, the Bidding Procedures Hearing, or this Order need be provided.

D.       The bidding procedures, substantially in the form attached hereto as **Exhibit 1** (the "Bidding Procedures") and incorporated herein by reference as if fully set forth in this Order, are fair, reasonable, and appropriate and are designed to maximize the value of the proceeds of the sale of all, substantially all, or a portion of the Debtor's assets (the "Assets").

E.       The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

F.       The procedures set forth herein regarding the Debtor's assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with a sale of the Assets (the "Assumption and Assignment Procedures") are fair, reasonable, and appropriate and comply with the provisions of section 365 of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

G.       The Debtor has articulated good and sufficient business reasons for the Court to approve the relief requested in the Motion, including, without limitation, (i) the Bidding Procedures; (ii) the form and manner of notice of the Bidding Procedures, the auction of the Assets

(the "Auction"), and the final hearing to consider approval of a sale of the Assets (the "Sale Hearing"), substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice"); (iii) the form and manner of notice to each relevant non-debtor counterparty to a Contract (each, a "Counterparty") of (a) the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Costs") and (b) certain other information regarding the potential assumption and assignment of Contracts in connection with the sale of the Assets, substantially in the form attached hereto as **Exhibit 3** (the "Assumption and Assignment Notice"); and (iv) the Assumption and Assignment Procedures.  Such good and sufficient business reasons, which were set forth in the Motion and on the record at the Bidding Procedures Hearing, including the First Day Declaration and the Ayers Declaration, and are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

H.      The Bidding Procedures are reasonably designed to promote active bidding at, and participation in, the Auction to ensure that the highest or otherwise best value is generated for the Assets.

I.      The Debtor is authorized to select a Stalking Horse Bidder, to file a Stalking Horse Notice, and to seek entry of a Stalking Horse Order, approving, among other things, Bid Protections.

J.      The Sale Notice, the Publication Notice, and the Assumption and Assignment Notice are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing, the Bidding Procedures, the Assumption and Assignment Procedures, the Debtor's proposed Cure Costs, any proposed assumption of a Contract in connection with a sale of the Assets, and all relevant and important dates and deadlines with

respect to the foregoing, and no other or further notice of the Auction, the Sale of the Assets, or the assumption and assignment of Contracts in connection therewith shall be required.

K.      The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

2.      All objections to the relief granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled, and denied on the merits with prejudice.

**A.      The Timeline for the Sale**

3.      The Debtor is authorized to proceed with the sale transaction in accordance with the Bidding Procedures and to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

| Deadline | Event |
|---|---|
| **One business day after the entry of the Bidding Procedures Order** | Deadline for Debtor to file and serve Sale Notice and Assumption and Assignment Notice |
| **Five business days after entry of the Bidding Procedures Order** | Deadline for Debtor to publish Publication Notice |
| **Wednesday, July 2, 2025** | Deadline for Debtor to designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement |
| **Monday, July 14, 2025 at 4:00 p.m. (ET)** | Deadline to object to Cure Costs |
| **Wednesday, July 16, 2025 at 5:00 p.m. (ET)** | Bid Deadline |

| | |
|---|---|
| **Thursday, July 17, 2025 at 4:00 p.m. (ET)** | Sale Objection Deadline |
| **Thursday, July 17, 2025** | Deadline to designate Qualified Bids or to cancel the Auction, as applicable |
| **Friday, July 18, 2025 at 10:00 a.m. (ET)** | Auction (if needed) |
| **One business day after the conclusion of the Auction** | Deadline for Debtor to file and serve Notice of Auction Results |
| **Wednesday, July 23, 2025 at 5:00 p.m. (ET)** | Supplemental Sale Objection Deadline and Adequate Assurance Objection Deadline |
| **4:00 p.m. (ET) one business day before Sale Hearing** | Debtor's Reply Deadline |
| **Friday, July 25, 2025 at 3:00 p.m. (ET)** | Sale Hearing |
| **Tuesday, July 29, 2025** | Deadline to Consummate Sale |

**B.      The Bidding Procedures**

4.      The Bidding Procedures attached hereto as **Exhibit 1** are hereby approved in their entirety and are incorporated by reference as if fully set forth herein.  The Bidding Procedures shall govern the selection of a Stalking Horse Bidder, bids and proceedings related to the Auction and the sale of the Assets.  The failure to specifically include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

5.      Subject to this Order and the Bidding Procedures, the Debtor, in the exercise of its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, shall have the right to, following consultation with the Official Committee of Unsecured Creditors (if any, the "Committee" and, together with any lender providing debtor in possession financing, the "Consultation Parties"): (i) select a Stalking Horse Bidder and provide such Stalking Horse with Bid Protections; (ii) determine which bidders qualify as "Qualified Bidders," and which bids qualify as "Qualified Bids;" (iii) make final determinations as to whether the Debtor will conduct an Auction; (iv) select the Baseline Bid for the Assets; (v) determine the amount of each Minimum Overbid; (vi) determine the highest or otherwise best offer for the Assets (such

bid, a "Leading Bid"); (vii) determine which Qualified Bid is the highest or otherwise best bid for the Assets (such Qualified Bid, including the Stalking Horse Bid if no other Qualified Bids are received and no Auction conducted, a "Successful Bid") and which Qualified Bid is the next highest and otherwise best bid after the Successful Bid for the Assets (such Qualified Bid, a "Backup Bid"); (viii) reject any bid that is (a) inadequate or insufficient; (b) not in conformity with the requirements of this Order or any other applicable order of the Court, the Bidding Procedures, the Bankruptcy Code, or other applicable law; or (c) contrary to the best interests of the Debtor and its estate; (ix) adjourn or cancel the Auction in accordance with the Bidding Procedures; and (x) adjourn the Sale Hearing in accordance with the Bidding Procedures.

6.     In accordance with and subject to the Bidding Procedures, the Debtor, in the exercise of its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, shall have the right, in consultation with the Consultation Parties, to modify the Bidding Procedures, including to (i) extend or waive deadlines or other terms and conditions set forth herein or therein; (ii) adopt new rules and procedures for conducting the bidding and Auction process so long as any such modifications are disclosed to all Prospective Bidders and Qualified Bidders; and (iii) otherwise modify the Bidding Procedures to further promote competitive bidding for, and maximizing the value of, the Assets.

7.     In connection with the Sale of all or any portion of the Assets, a person or entity holding a perfected security interest in such Assets may seek to credit bid some or all of its claims for its respective collateral (each such bid, a "Credit Bid") pursuant to section 363(k) of the Bankruptcy Code.

**C.     Stalking Horse Agreement and Bid Protections**

8.      The Stalking Horse Designation Procedures are approved, and the Debtor is authorized to seek approval of a Stalking Horse Agreement with a Stalking Horse Bidder and provide Bid Protections, in accordance with the Stalking Horse Designation Procedures.  The Debtor may designate a Stalking Horse Bidder **no later than July 2, 2025**, which deadline may be extended by the Debtor (after consultation with the Consultation Parties).

9.      If the Debtor selects a Stalking Horse Bidder, then the Debtor shall file with the Court and serve a notice (the "Stalking Horse Notice") regarding such selection and provide no less than five (5) business days' notice of the deadline to object to the Debtor's acceptance of the Stalking Horse Bid to (a) the U.S. Trustee, (ii) the Consultation Parties, and (iii) any party that has filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the chapter 11 case (the "Stalking Horse Notice Parties") with no further or other notice regarding the Stalking Horse Bidder, the Stalking Horse Bid, or the Bid Protections being required. Any Stalking Horse Notice shall (a) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) set forth the amount of the Stalking Horse Bid and any Bid Protections; (c) state whether the Stalking Horse Bidder has any connection to the Debtor other than those that arise from the Stalking Horse Bid; (d) confirm the proposed Bid Protections are consistent with the Bidding Procedures Order; (e) attach the stalking horse purchase agreement finalized with the Stalking Horse Bidder or otherwise summarize the material terms thereof; and (f) set forth the deadline to object to the Stalking Horse Bidder designation.  All parties in interest shall have the right to object to the Debtor's entry into a Stalking Horse Agreement on any grounds, including objections to the Bid Protections and the form of proposed order (a "Stalking Horse Order").

7

10.     Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (a "Stalking Horse Objection") shall (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof and (d) be filed with the Court and served on the Objection Notice Parties within five (5) business days after the service of the Stalking Horse Notice.

11.     If a timely Stalking Horse Objection is filed, the Debtor will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid and in accordance with this Order and the Bidding Procedures.  If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the objection deadline, the Debtor will submit a proposed Stalking Horse Order to the Court approving the Debtor's entry into the Stalking Horse Bid (including the Stalking Horse Agreement and the Bid Protections), which the Court may enter without a hearing and any further or other notice except as required herein or under the Bidding Procedures, including with respect to any Bid Protections set forth in the Stalking Horse Notice.

12.     Upon entry of a Stalking Horse Order, any Stalking Horse Agreement executed by the Debtor and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to a Stalking Horse Agreement executed by the Debtor will be deemed to be a Qualified Bidder.

**D.     Bid Deadline and Auction**

13.     Any Prospective Bidder that intends to participate in the Auction must submit in writing to Rock Creek a Qualified Bid on or before **July 16, 2025 at 5:00 p.m. (ET)** (the "Bid Deadline").  The Debtor shall promptly provide a copy of each bid to the Consultation Parties.

14.     If the Debtor receives more than one Qualified Bid for the Assets, the Debtor shall conduct an Auction for the Assets.

15.     The Auction, if required, will be conducted either at the offices of Goodwin Procter LLP, The New York Times Building, 620 8th Avenue, New York, NY 10018 or virtually, on **July 18, 2025, at 10:00 a.m. (ET)** or at such other date, time or location as designated by the Debtor, after consulting with the Consultation Parties. If the Debtor conducts the Auction virtually, the Debtor will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail. The Debtor will provide notice (via electronic mail or otherwise) of any change in the date, time, or location of the Auction to Qualified Bidders and the Consultation Parties and will cause publication of such change to occur on the Case Website (as defined below). If held, the Auction proceedings shall be transcribed or video recorded.

16.     If the Debtor determines not to hold an Auction, the Debtor shall file with the Court, and cause to be served and published on the website maintained by the Debtor's claims and noticing agent in this chapter 11 case, located at https://dm.epiq11.com/CharterSchoolCapital (the "Case Website"), a notice containing the following information (as applicable): (i) a statement that the Auction has been canceled; (ii) the identity of the Successful Bidder; (iii) either include a copy of the Successful Bid or a summary of the material terms of such bid, or provide instructions for accessing the Successful Bid free of charge from the Case Website; and (iv) the date, time, and location of the Sale Hearing.

17.     Only a Qualified Bidder that has submitted a Qualified Bid shall be eligible to participate in the Auction, subject to any other limitations as the Debtor may reasonably impose in accordance with the Bidding Procedures. Qualified Bidders participating in the Auction must attend the Auction personally or through a duly authorized representative. The Debtor may

establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of a Qualified Bidder or otherwise attend the Auction.

18.     Each Qualified Bidder participating in the Auction shall confirm in writing on the record that (i) it has not engaged in any collusion with respect to the Auction or the submission of any bid for any of the Assets; and (ii) the Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction constitutes a binding, good-faith, and *bona fide* offer to purchase the Assets identified in such bids.

19.     Within one business day after the conclusion of the Auction, the Debtor shall file with the Court, and cause to be served and published on the Case Website, a notice setting forth the results of the Auction (the "Notice of Auction Results").  The Notice of Auction Results will (i) identify each Successful Bidder and each Backup Bidder; (ii) either include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bid, or provide instructions for accessing each Successful Bid and each Backup Bid free of charge from the Case Website; and (iii) set forth the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise parties in interest of the outcome of the Auction.  The Notice of Auction Results shall also include the deadline to file and serve Adequate Assurance Objections with respect to any Successful Bidder.

**E.     Sale Noticing and Objection Procedures**

20.     Except objections to the conduct of the Auction, all objections to the sale of the Assets (each, a "Sale Objection"), including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, shall be (i) in writing and state, with specificity, the legal and factual bases thereof and include any

appropriate documentation in support thereof; (ii) filed with the Court by **no later than July 17, 2025, at 4:00 p.m. (ET)** (the "Sale Objection Deadline"); and (iii) served on the following parties (collectively, the "Objection Notice Parties"): (i) proposed counsel to the Debtor, (a) Goodwin Procter LLP, The New York Times Building, 620 8th Avenue, New York, NY 10018 Attn: Howard S. Steel (hsteel@goodwinlaw.com); Kizzy L. Jarashow (kjarashow@goodwinlaw.com); Stacy A. Dasaro (sdasaro@goodwinlaw.com); and James Lathrop (jlathrop@goodwinlaw.com) and (b) Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Aaron H. Stulman (astulman@potteranderson.com), Brett M. Haywood (bhaywood@potteranderson.com), and James R. Risener (jrisener@potteranderson.com)); (ii) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Linda J. Casey (linda.casey@usdoj.gov)); (iii) if any statutory committee has been appointed in this chapter 11 case, counsel to such committee; (iv) if applicable, counsel for the Successful Bidder; and (v) if applicable, counsel for the Backup Bidder.

21.     Following service of the Notice of Auction Results, parties in interest may file an objection solely with respect to the conduct of the Auction (each a "Supplemental Sale Objection"). Any Supplemental Sale Objection shall be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (ii) filed with the Court by **no later than July 23, 2025 at 5:00 p.m. (ET)** (the "Supplemental Sale Objection Deadline"); and (iii) served on the Objection Notice Parties.

22.     Any party who fails to file and serve a timely Sale Objection or a Supplemental Sale Objection in accordance with the terms of this Order shall be forever barred from asserting, at the Sale Hearing or thereafter, any Sale Objection or Supplemental Sale Objection to the relief

requested in the Motion, or to the consummation or performance of the sale of the Assets, including the transfer of Assets to the Successful Bidder free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

23.    Consummation of the sale of the Assets pursuant to a Successful Bid shall be subject to Court approval.  The Sale Hearing to (a) approve a sale of all, substantially all, or a portion of the Assets to the Successful Bidder(s) and (b) authorize the assumption and assignment of certain Contracts shall be held before the Court on **July 25, 2025 at 3:00 p.m. (ET)**. The Sale Hearing may be adjourned without further notice other than announcing such adjournment at the Sale Hearing or filing a notice on the Court's docket indicating such adjournment.

24.    The Sale Notice, substantially in the form attached hereto as **<u>Exhibit 2</u>**, is approved, and no other or further notice of the proposed Sale of the Assets, the Auction, the Sale Hearing, the Sale Objection Deadline, or the Supplemental Sale Objection Deadline shall be required if the Debtor serves and publishes the Sale Notice in the manner provided in the Bidding Procedures and this Order.  **By no later than one business day after entry of this Order**, the Debtor shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the Case Website, the Sale Notice.

25.    **As soon as practicable but no later than five (5) business days after the entry of this Order**, the Debtor may, in its discretion, cause the information substantially in the form contained in the Sale Notice, with such modifications as may be appropriate for purposes of publication, to be published once in the national edition of *USA Today* or *The New York Times* (the "<u>Publication Notice</u>").

**F.    Assumption and Assignment Procedures**

26.    The Assumption and Assignment Notice, substantially in the form attached hereto as **<u>Exhibit 3</u>**, is approved, and no other or further notice of the assumption or the assumption and assignment of the Contracts or of the proposed Cure Costs is necessary or required.

27.    **By no later than one business day after entry of this Order**, the Debtor shall file with the Court, serve on the applicable Counterparties (and counsel, if known), and cause to be published on the Case Website, the Assumption and Assignment Notice.

28.    Any objection to the proposed Cure Costs (each a "<u>Cure Objection</u>") shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) filed with the Court by **no later than July 14, 2025, at 4:00 p.m. (ET)**; and (c) served on the Objection Notice Parties.

29.    The Debtor, any Stalking Horse Bidder, or the Successful Bidder, as applicable, and the objecting Counterparty shall first confer in good faith to attempt to resolve the Cure Objection without Court intervention.  If a Cure Objection is resolved in a manner that is not in the best interests of the Debtor and its estate, whether or not such resolution occurs prior to or after the closing of the sale of the Assets, the Debtor or the Successful Bidder may determine that any Contract subject to such resolved Cure Objection no longer will be assumed and assigned in connection with the sale of the Assets (subject to the terms of the applicable purchase agreement). If a timely Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing or, with the agreement of the Debtor, any Stalking Horse Bidder, or the Successful Bidder, as applicable, be adjourned to a subsequent hearing, with notice to the party having filed the Cure Objection (each an "<u>Adjourned Cure Objection</u>").  An Adjourned Cure Objection may be resolved after the closing of the Sale of the Assets.  Upon resolution of an

Adjourned Cure Objection and the payment of the applicable cure amount, if any, the Contract that was the subject of such Adjourned Cure Objection shall be deemed assumed and assigned to the Successful Bidder as of the closing date of the Sale of the Assets.

30.     If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Cure Objection, the Counterparty forever shall be barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract, *provided, however*, that a Counterparty to an assumed Contract shall not be barred from seeking additional amounts on account of any defaults occurring between the service of the Assumption and Assignment Notice and the assumption of the Contract.  The Cure Costs set forth in the applicable Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract and satisfy the requirements of section 365(b) of the Bankruptcy Code, and the Counterparty to the Contract shall be bound by and deemed to have consented to the Cure Costs.

31.     In accordance with the Bidding Procedures, Qualified Bids shall be accompanied by Adequate Assurance Information (as defined in the Bidding Procedures).  The Debtor shall promptly provide, upon a Counterparty's request to the Debtor's counsel, the Adequate Assurance Information to any Counterparty (and counsel, if known) to any Contract that may be assumed by the applicable Qualified Bidder.

32.     Any objection to the proposed assumption and assignment of a Contract, the subject of which objection is the provision of adequate assurance of future performance with respect to the Contract (each such objection, an "Adequate Assurance Objection"), shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate

documentation in support thereof; (b) filed with the Court by **no later than July 23, 2025 at 5:00 p.m. (ET)**; and (c) served on the Objection Notice Parties.

33.     The Debtor, any Stalking Horse Bidder, or the Successful Bidder, as applicable, and a Counterparty that has filed an Adequate Assurance Objection shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention.  If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the Successful Bidder (or any other relevant assignee) shall be determined by the Court at the Sale Hearing or, at the option of the Debtor, the Stalking Horse Bidder, or the Successful Bidder, as applicable, be adjourned to a subsequent hearing, with notice to the party having filed the Adequate Assurance Objection.

34.     If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any objection to the assumption and/or assignment of a Contract with regard to adequate assurance of future performance.  The Successful Bidder shall be deemed to have provided adequate assurance of future performance with respect to a Contract in accordance with Bankruptcy Code sections 365(b)(1)(C), 365(f)(2)(B), and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or any other document.

35.     If (i) the Debtor identifies (a) additional Contracts to be assumed and assigned to a Successful Bidder (any "Additional Contracts"), or (b) modifications that need to be made to a proposed Cure Cost previously stated in the Assumption and Assignment Notice, or (ii) a Stalking Horse Bidder or Successful Bidder designates any Additional Contracts not previously included on the Assumption and Assignment Notice for assumption in accordance with the time period set

forth in the applicable purchase agreement between the Debtor and such Successful Bidder, the Debtor shall promptly file with the Court and serve by first class mail a supplemental Assumption and Assignment Notice, the form of which shall be substantially similar to the form of Assumption and Assignment Notice (each, a "Supplemental Assumption and Assignment Notice"), only on the Counterparties to each added, removed, or otherwise affected Contract. As soon as reasonably practicable after filing a Supplemental Assumption and Assignment Notice, the Debtor shall post a copy of the Supplemental Assumption and Assignment Notice on the Case Website. Any Cure Objection with respect to Cure Costs set forth in a Supplemental Assumption and Assignment Notice or any Adequate Assurance Objection with respect to the provision of adequate assurance of future performance must be filed no less than seven (7) calendar days after service of a Supplemental Assumption and Assignment Notice and must otherwise comply with the requirements herein for Cure Objections.

36.    As soon as reasonably practicable after the closing of the Sale of the Assets, the Debtor shall file with the Court, serve on the applicable Counterparties, and cause to be published on the Case Website, a notice containing the list of Contracts that the Debtor assumed and assigned pursuant to any asset purchase agreement with a Successful Bidder.

37.    The inclusion of a Contract or Cure Costs with respect to any Contract on any Assumption and Assignment Notice, shall not constitute or be deemed a determination or admission by the Debtor, a Stalking Horse Bidder, any Successful Bidder, or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code, and shall not be a guarantee that such Contract ultimately will be assumed or assigned. The Debtor reserves all rights, claims, and causes of action with respect to each Contract listed on any Assumption and Assignment Notice.

**G.    Other Related Relief**

38.    All persons and entities that participate in the Auction or bid for the Assets during the sale process shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order; (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order; and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

39.    Nothing in this Order, or any of the Exhibits hereto, shall (i) prevent the Debtor from, in the exercise of its fiduciary duties, pursuing or otherwise consummating an alternative transaction or (ii) obligate the Debtor to pursue or consummate any transaction with any Qualified Bidder.

40.    Notwithstanding the applicability of any of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or any other provisions of the Bankruptcy Rules or the Local Rules stating to the contrary, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

41.    The Debtor is authorized to take all steps necessary or appropriate to implement the relief granted in this Order.

42.     This Order shall be binding on and inure to the benefit of the Debtor, including any Chapter 7 or Chapter 11 trustee or other fiduciary appointed for the estate of the Debtor.

43.     This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

## Exhibit 1

**Bidding Procedures**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                            :        Chapter 11
:
Charter School Capital, Inc.,[1]              :        Case No. 25-11016 (CTG)
:
Debtor.                               :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - x

## BIDDING PROCEDURES

The above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case will use the procedures set forth herein (the "Bidding Procedures") in connection with a sale or disposition of all, substantially all, or a portion of the Debtor's assets (the "Assets").

On June 11, 2025, the Debtor filed with the United States Bankruptcy Court for the District of Delaware (the "Court") the *Debtor's Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (B) Authorizing the Debtor to Designate One or More Stalking Horse Bidders and to Provide Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. ●] (the "Motion").  By the Motion, the Debtor sought, among other things, entry of an order approving Bidding Procedures for soliciting bids for an auction (the "Auction") of, and consummating a sale of, the Assets, as further described herein.

On [●], 2025, the Court entered the *Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (II) Authorizing the Debtor to Designate One or More Stalking Horse Bidders and to Provide Bid Protections, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* [Docket No. ●] (the "Bidding Procedures Order").[2]

---

[1] The Debtor's mailing address is 9450 SW Gemini Dr., PMB 559064, Beaverton, OR, 97008-7105, and the last four digits of the Debtor's federal tax identification number are 4278.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in these Bidding Procedures or in the Bidding Procedures Order, as applicable.

## I.    ASSETS FOR SALE

The Debtor intends to sell all, substantially all, or a portion of its Assets, including any owned real property, intellectual property, and all claims, causes of action, lawsuits, judgments, and demands of any nature, in each case, available to or being pursued by the Debtor.

A Prospective Bidder may bid on the Assets, subject to the conditions set forth herein.

The ability to undertake and consummate a sale of the Assets shall be subject to competitive bidding, as set forth herein, and approval by the Court.  In addition to any Stalking Horse Bid, and as set forth herein, the Debtor will consider bids for the Assets from other parties.

Parties may submit bids for all or some of the Debtor's business and assets, including for parts of the Debtor's business or assets (each, a "Partial Bid"), which bids may be combined with other Partial Bids or be considered independently and/or together with the liquidation value (as reasonably determined by the Debtor in good faith) of the Debtor's business or assets that are not the subject of other Partial Bids to be deemed a Qualified Bid.

Any party interested in submitting a bid for any of the Debtor's Assets should contact the Debtor's sales agent:

**Rock Creek Advisors, LLC**
Brian Ayers (bayers@rockcreekfa.com)
Jim Gansman (jgansman@rockcreekfa.com)
Tim Peach (tpeach@rockcreekfa.com)

## II.    KEY DATES AND DEADLINES

| Deadline | Event |
|---|---|
| **One business day after the entry of the Bidding Procedures Order** | Deadline for Debtor to file and serve Sale Notice and Assumption and Assignment Notice |
| **Five business days after entry of the Bidding Procedures Order** | Deadline for Debtor to publish Publication Notice |
| **Wednesday, July 2, 2025** | Deadline for Debtor to designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement |
| **Monday, July 14, 2025 at 4:00 p.m. (ET)** | Deadline to object to Cure Costs |
| **Wednesday, July 16, 2025 at 5:00 p.m. (ET)** | Bid Deadline |
| **Thursday, July 17, 2025 at 4:00 p.m. (ET)** | Sale Objection Deadline |
| **Thursday, July 17, 2025** | Deadline to designate Qualified Bids or to cancel the Auction, as applicable |

| | |
|---|---|
| **Friday, July 18, 2025 at 10:00 a.m. (ET)** | Auction (if needed) |
| **One business day after the conclusion of the Auction** | Deadline for Debtor to file and serve Notice of Auction Results |
| **Wednesday, July 23, 2025 at 5:00 p.m. (ET)** | Supplemental Sale Objection Deadline and Adequate Assurance Objection Deadline |
| **4:00 p.m. (ET) one business day before Sale Hearing** | Debtor's Reply Deadline |
| **Friday, July 25, 2025 at 3:00 p.m. (ET)** | Sale Hearing |
| **Tuesday, July 29, 2025** | Deadline to Consummate Sale |

## III.    DUE DILIGENCE

Each person or entity that desires to participate as a bidder in the Auction process (each, a "Prospective Bidder") must first deliver to Rock Creek Advisors, LLC ("Rock Creek") the following:

- documentation identifying the Prospective Bidder, its principals, and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Sale;

- an executed confidentiality agreement, in form and substance satisfactory to the Debtor;

- a statement and other factual support demonstrating to the Debtor and its advisors, in their sole judgment, that the Prospective Bidder has a *bona fide* interest in purchasing some or all of the Assets; and

- preliminary proof by the Prospective Bidder of its financial capacity to close a proposed sale transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Prospective Bidder (or, if the Prospective Bidder is an entity formed for the purpose of acquiring the Assets to be sold, the party that will bear liability for a breach by the Prospective Bidder of an asset purchase agreement or other agreement entered into in respect of the sale transaction), the adequacy of which the Debtor will determine in its sole judgment.

Without the need for any further action, any Stalking Horse Bidder is a Qualified Bidder.

Upon execution of a valid confidentiality agreement and subject to the other limitations and guidelines set forth herein, the Debtor may grant a Prospective Bidder that the Debtor identifies as reasonably likely to become a Qualified Bidder with access to information allowing such Prospective Bidder to conduct due diligence with respect to the potential acquisition of some or all of the Assets. If any Prospective Bidder is (or is affiliated with) a competitor of the Debtor, the

Debtor will not be required to disclose to such Prospective Bidder any trade secrets or proprietary information (as determined by the Debtor in its sole discretion), unless the confidentiality agreement executed by such Prospective Bidder is satisfactory to the Debtor and contains provisions sufficient to ensure that such Prospective Bidder will not use such trade secrets or proprietary information for an improper purpose or to gain an unfair competitive advantage.

If the Debtor determines, after consulting with the Consultation Parties, that a Prospective Bidder is unlikely to qualify as a Qualified Bidder or fails to become a Qualified Bidder, then such Prospective Bidder shall have no further right to access due diligence or any other non-public information. The Prospective Bidder shall return or destroy any non-public information the Debtor or its advisors provided to the Prospective Bidder in accordance with the terms of the confidentiality agreement executed by the Debtor and the Prospective Bidder.

The Debtor will try to accommodate all reasonable requests from Prospective Bidders for additional information and due diligence access. All due diligence requests shall be directed to the Debtor's sales agent:

**Rock Creek Advisors, LLC**
Brian Ayers (bbayers@rockcreekfa.com)
Jim Gansman (jgansman@rockcreekfa.com)
Tim Peach (tpeach@rockcreekfa.com)

## IV.    STALKING HORSE AGREEMENT AND BID PROTECTIONS

The procedures set forth in this section (the "Stalking Horse Designation Procedures") shall apply to the designation of any Stalking Horse Bidder, Stalking Horse Agreement and Bid Protections.

Subject to the provisions set forth herein, the Bidding Procedures Order, and in consultation with the Consultation Parties, the Debtor may designate a Stalking Horse Bidder that submits a Qualified Bid acceptable to the Debtor and enter into a Stalking Horse Agreement, subject to higher or otherwise better offers at the Auction, **no later than July 2, 2025**, which deadline may be extended by the Debtor (after consultation with the Consultation Parties).

The Debtor, in consultation with the Consultation Parties, may seek approval of one or more bid protections, including, break-up fees and/or reimbursement of expenses, if any, for documented, actual, and necessary expenses incurred by any Stalking Horse Bidder (collectively, the "Bid Protections").

If the Debtor selects a Stalking Horse Bidder, then the Debtor shall file with the Court and serve a notice (the "Stalking Horse Notice") regarding such selection and provide no less than five (5) business days' notice of the deadline to object to the Debtor's acceptance of the Stalking Horse Bid to (a) the U.S. Trustee, (ii) the Consultation Parties, and (iii) any party that has filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the chapter 11 case (the "Stalking Horse Notice Parties") with no further or other notice regarding the Stalking Horse Bidder, the Stalking Horse Bid, or the Bid Protections being required. Any Stalking Horse Notice shall (a) set forth the identity of the Stalking Horse Bidder (and if the

Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) set forth the amount of the Stalking Horse Bid and any Bid Protections; (c) state whether the Stalking Horse Bidder has any connection to the Debtor other than those that arise from the Stalking Horse Bid; (d) confirm the proposed Bid Protections are consistent with the Bidding Procedures Order; (e) attach the stalking horse purchase agreement finalized with the Stalking Horse Bidder  or otherwise summarize the material terms thereof; and (f) set forth the deadline to object to the Stalking Horse Bidder designation.  All parties in interest shall have the right to object to the Debtor's entry into a Stalking Horse Agreement on any grounds, including objections to the Bid Protections and the form of proposed order (a "Stalking Horse Order").

Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (a "Stalking Horse Objection") shall (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof and (d) be filed with the Court and served on the Objection Notice Parties within five (5) business days after the service of the Stalking Horse Notice.

If a timely Stalking Horse Objection is filed, the Debtor will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid and in accordance with this Order and the Bidding Procedures.  If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the objection deadline, the Debtor will submit a proposed Stalking Horse Order to the Court approving the Debtor's entry into the Stalking Horse Bid (including the Stalking Horse Agreement and the Bid Protections), which the Court may enter without a hearing and any further or other notice except as required herein or under the Bidding Procedures, including with respect to any Bid Protections set forth in the Stalking Horse Notice.

Upon entry of a Stalking Horse Order, any Stalking Horse Agreement executed by the Debtor and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to a Stalking Horse Agreement executed by the Debtor will be deemed to be a Qualified Bidder.

Other than as provided by order of the Court, no party submitting a Bid shall be entitled to a break-up fee or expense reimbursement except for the Bid Protections for any Stalking Horse Bidder.  Any substantial contribution claims by any bidder are deemed waived.

## V.  BID DEADLINE

Any Prospective Bidder that intends to participate in the Auction must submit in writing to the Bid Notice Parties a Qualified Bid on or before **July 16, 2025 at 5:00 p.m. (ET)** (the "Bid Deadline").  The Debtor shall promptly provide a copy of each bid to the Consultation Parties.

## VI.  BID REQUIREMENTS

### A.  Qualified Bid Requirements

To qualify as a "Qualified Bid," a bid must be in writing and satisfy the following requirements:

1.    <u>Identification of Bidder</u>.  A Qualified Bid must fully disclose the following: (a) the legal identity of each person or entity bidding for the Assets and/or otherwise sponsoring, financing (including through the issuance of debt in connection with such bid), or participating in (including through license or similar arrangement with respect to the Assets to be acquired in connection with such bid) the Auction in connection with such bid and the complete terms of any such participation; and (b) any past or present connections or agreements with the Debtor, any other known Prospective Bidder, any Stalking Horse Bidder, or Qualified Bidder, or any officer or director of any of the foregoing (including any current or former officer or director of the Debtor).

2.    <u>Purchased Assets</u>.  A Qualified Bid must identify the following:

    a.    the Assets to be purchased, including any executory contracts and unexpired leases (collectively, the "<u>Contracts</u>") that, as of the submission of such bid, the Prospective Bidder proposes to be assumed and assigned by the Debtor in connection with the proposed sale; and

    b.    the liabilities, if any, to be assumed, including any debt to be assumed.

3.    <u>Form of Consideration</u>.

    a.    <u>Credit Bidding</u>.  In connection with the Sale of all or any portion of the Assets, a person or entity holding a perfected security interest in such Assets may seek to credit bid some or all of its claims for its respective collateral (each such bid, a "<u>Credit Bid</u>") pursuant to section 363(k) of the Bankruptcy Code.

    b.    <u>Consideration</u>.  Each other bid must include a statement confirming that the bid is based on an all-cash offer, or if a bid includes forms of consideration other than cash, the bidder shall include an analysis or description of the value of such non-cash components, including any supporting documentation, to assist the Debtor and the Consultation Parties in evaluating the bid.

4.    <u>Minimum Bid for Assets</u>.  If a Stalking Horse Bidder has been designated, each bid that is not a Stalking Horse Bid must have a value to the Debtor, as determined by the Debtor, in consultation with the Consultation Parties, that is greater than or equal to the sum of (a) the value offered under the Stalking Horse Agreement, <u>plus</u> (b) the amount of the Bid Protections, if any, <u>plus</u> (c) $100,000 (collectively, the "<u>Minimum Bid Amount</u>").  Any subsequent bid made by the Stalking Horse Bidder shall be deemed to have been made in an amount equal to such subsequent bid plus the Bid

Protections, if any, to the extent provided for in the Stalking Horse Agreement.

If the value of a bid relative to the Stalking Horse Bid includes non-cash components (such as fewer contingencies than are in such Stalking Horse Agreement), the bidder should include an analysis or description of the value of any such additional non-cash components, including any supporting documentation, to assist the Debtor and the Consultation Parties in better evaluating the competing bid. The Debtor, in consultation with its advisors and the Consultation Parties, reserves the right in its sole discretion to ascribe a value to any non-cash components of competing bids and the Stalking Horse Bid.

If a Stalking Horse Bidder is not designated pursuant to the Stalking Horse Designation Procedures, the Debtor may set a minimum bid requirement, which shall be considered the Minimum Bid Amount for all purposes hereunder. In such case, the Debtor shall inform (email being sufficient) any known potential bidder of such Minimum Bid Amount.

5.   Proposed Asset Purchase Agreement.  A Qualified Bid must constitute an irrevocable offer and be in the form of an asset purchase agreement reflecting the terms and conditions of the bid (each, a "Proposed Asset Purchase Agreement"). A Proposed Asset Purchase Agreement shall be (a) duly authorized and executed; (b) based on, and marked against the form asset purchase agreement (the "Form APA") or, if a Stalking Horse Bidder has been designated, the Stalking Horse Agreement, to reflect the proposed sale transaction and to show any other proposed modifications to the Form APA or Stalking Horse Agreement, as applicable; (c) specify the proposed purchase price for the Assets in U.S. dollars; (d) include all exhibits and schedules contemplated thereby (other than exhibits and schedules that, by their nature, must be prepared by the Debtor); and (e) identify any Contracts that, as of the submission of such bid, the Prospective Bidder proposes to be assumed and assigned by the Debtor in connection with the proposed sale transaction.

6.   Financial Information.  A Qualified Bid must include the following:

a.   a statement that the Prospective Bidder is financially capable of consummating the sale transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement;

b.   sufficient evidence, as determined by the Debtor in its sole discretion, to determine that the Prospective Bidder has, or will obtain, the financial wherewithal to consummate the sale transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement; and

c.     Adequate Assurance Information with respect to any Contracts included or that may be included in the Prospective Bidder's bid, including the identity of any known proposed assignee of the applicable Contracts (if different from the Prospective Bidder), including contact information for such proposed assignee.

7.     <u>Good Faith Deposit</u>.  Each Qualified Bid must be accompanied by a good faith deposit (each, a "<u>Good Faith Deposit</u>") in the form of cash in an amount equal to ten percent (10%) of the proposed purchase price for the Assets.  The Good Faith Deposit shall be deposited **no later than the Bid Deadline** with an escrow agent selected by the Debtor (the "<u>Escrow Agent</u>") and held in escrow until ten (10) business days after the conclusion of the Auction, except for the Good Faith Deposit of any bidder who is selected at the Auction as a Successful Bidder or as a Backup Bidder, and thereafter returned to the respective Qualified Bidders in accordance with these Bidding Procedures.

8.     <u>Adequate Assurance</u>.  A Qualified Bid must include evidence of the Prospective Bidder's (or any other relevant assignee's) ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Prospective Bidder's (or any other relevant assignee's) ability to perform future obligations arising under any Contracts included in its bid.  The Debtor may require the following information in connection with demonstrating adequate assurance of future performance: (a) information evidencing the Prospective Bidder's (or any other relevant assignee's) financial wherewithal and willingness to perform under any Contracts included in the bid, which information may include (i) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (ii) financial statements, (iii) tax returns, and (iv) annual reports; and (b) the Prospective Bidder's (or any other relevant assignee's) proposed use of any leased premises or other property included in the bid (the information described in clauses (a) and (b), the "<u>Adequate Assurance Information</u>").

All Adequate Assurance Information must be in a form that will permit its immediate dissemination to Contract counterparties ("<u>Counterparties</u>").

9.     <u>Representations and Warranties (As-Is, Where-Is)</u>.  Each Qualified Bid must include a written acknowledgement and representation that (a) the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its Qualified Bid, (b) the Prospective Bidder has relied solely upon its own or its advisors' independent review, investigation, and/or inspection of any documents and/or the Assets in making its Qualified Bid, (c) the Prospective Bidder did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of

any information provided in connection therewith or the Auction, except as expressly stated in the Prospective Bidder's Proposed Asset Purchase Agreement; and (d) the Assets will be conveyed "as is, where is, with all faults," with limited representations and warranties, and no indemnification or guarantees by the Debtor.

10. <u>Authorization</u>. A Qualified Bid must (a) include evidence of authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of any bid for the Assets, participation in the Auction, and closing of the sale transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement; or, (b) if the Prospective Bidder is an entity formed for the purpose of effecting the proposed sale transaction, a Qualified Bid must provide written evidence acceptable to the Debtor of authorization and the approval by the equity holder(s) of such Prospective Bidder.

11. <u>Other Requirements</u>. A Qualified Bid must:

 a. state that the Prospective Bidder agrees to serve as a backup bidder (a "<u>Backup Bidder</u>") if such bidder's Qualified Bid is selected at the Auction as the next highest or next best bid after the Successful Bid for the Assets (each such bid, a "<u>Backup Bid</u>");

 b. state that the bid represents a binding, good-faith, and *bona fide* offer to purchase the Assets and is not subject to or conditioned on any further due diligence, and is irrevocable (i) until the selection of the Successful Bid in accordance with these Bidding Procedures; or (ii) if the bid is selected as a Successful Bid or as a Backup Bid, until the Backup Bid Expiration Date;

 c. state and acknowledge that the Prospective Bidder shall not be entitled to any bidding protection or payment in connection with the submission of a bid for the Assets or otherwise participating in the Sale Process;

 d. state that the Prospective Bidder is committed to closing the sale transaction contemplated in its bid as soon as practicable (and in no event later than July 29, 2025);

 e. expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with bidding for any of the Assets and/or otherwise participating in the Auction or the Sale Process;

 f. not contain any financing contingencies of any kind;

g.        state whether the Prospective Bidder intends to offer future employment to any of the Debtor's employees and, if so, to whom;

h.        certify that the Prospective Bidder did not collude with any other bidders and is not otherwise a partnership, joint venture, or other entity in which more than one bidder (or any affiliates of a bidder) has a direct or indirect interest, unless consented to in writing by the Debtor;

i.        include a covenant to comply with the terms of these Bidding Procedures and the Bidding Procedures Order; and

j.        contain such other information as may be reasonably requested by the Debtor.

By submission of its bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (a) has reviewed, understands, and accepts these Bidding Procedures, (b) has consented to the jurisdiction of the Court, (c) intends to consummate its Qualified Bid if it is selected as the Successful Bidder, and (d) waives any and all rights (whether actual or potential) to contest any of the Debtor's determinations made during, or in connection with, any aspect of the Bidding Process.

### B.      Bid Review Process

The Debtor will evaluate bids and, based upon its evaluation of the content of each bid, the Debtor may, as it deems appropriate in its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, engage in negotiations with any Prospective Bidder for the purposes of (i) curing any deficiencies in a bid that prevents it from constituting a Qualified Bid, (ii) improving the terms of the Prospective Bidder's bid, or (iii) otherwise promoting a more competitive bidding and Auction process with the ultimate goal of maximizing the value of the Assets.

In evaluating a bid, the Debtor may take into consideration any and all factors that the Debtor deem reasonably pertinent, including (i) the amount of the proposed purchase price and proposed form of consideration; (ii) any Assets included in, or excluded from, the bid, including any Contracts to be assumed and assigned; (iii) the value to be provided to the Debtor under the bid, including the net economic effect on the Debtor's estate; (iv) any benefits to the Debtor's estate from any assumption or waiver of liabilities contemplated by the bid; (v) the structure of the proposed sale transaction and any attendant execution risk, including conditions to, timing of, and certainty of closing, termination provisions, availability of financing and general financial wherewithal to meet all commitments, and any required governmental approvals; and (vi) the impact of the proposed sale transaction on the Debtor's employees, trade creditors, landlords, and any other parties in interest.

The Debtor will evaluate timely bids and will (i) after consultation with the Consultation Parties, determine which bids qualify as Qualified Bids and which Qualified Bid has been selected as the Baseline Bid and (ii) notify bidders whether they are Qualified Bidders as soon as commercially reasonable following the Bid Deadline. A Qualified Bidder shall not (without the

consent of the Debtor), modify, amend, or withdraw its Qualified Bid, unless for the purposes of increasing the purchase price or otherwise improving the terms of the Qualified Bid, as determined by the Debtor in its reasonable business judgment.

### C.    Qualified Bidders

A bid received for the Assets that the Debtor determine satisfies the requirements set forth herein will qualify as a "Qualified Bid," and any bidder that submits a Qualified Bid will qualify as a "Qualified Bidder."

The Debtor may, after consultation with the Consultation Parties, in its reasonable business judgment, in a manner consistent with its fiduciary duties and applicable law, amend or waive the conditions precedent to qualifying as a Qualified Bidder.

### D.    Bidding Protections

Other than any Bid Protections approved by the Court in connection with a Stalking Horse Bid, if any, no bidder or any other party shall be entitled to any termination or "break-up" fee, expense reimbursement, or any other bidding protection in connection with the submission of a bid for the Assets or otherwise participating in the Auction or the Sale Process.

## VII.    THE AUCTION

If the Debtor receives more than one Qualified Bid (including a combination of bids that, when considered together, constitute a Qualified Bid) for the Assets, the Debtor will conduct an Auction for the Assets.  If the Stalking Horse Bid is the only Qualified Bid received in respect of the Assets, the Debtor will not conduct an Auction for the Assets and will seek approval of such Stalking Horse Bid at the Sale Hearing.  If the Debtor determines not to hold an Auction, the Debtor will file with the Court, and cause to be served and published on the Case Website, a notice containing the following information, as applicable: (i) a statement that the Auction for the Assets has been canceled; (ii) the identity of the Successful Bidder; (iii) a copy of the Successful Bid or a summary of the material terms of such bid, including any assumption and assignment of Contracts contemplated thereby, or provide instructions for accessing the Successful Bid free of charge from the Case Website; and (iv) the date, time, and location of the Sale Hearing.

The Auction, if required, will be conducted either at the offices of  Goodwin Procter LLP, The New York Times Building, 620 8th Avenue, New York, NY 10018 or virtually, on **July 18, 2025, at 10:00 a.m. (ET)** or at such other date, time or location as designated by the Debtor, after consulting with the Consultation Parties.  If the Debtor conducts the Auction virtually, the Debtor will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail.  The Debtor will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Auction to Qualified Bidders and the Consultation Parties, and will cause publication of such change to occur on the Case Website.  If held, the Auction proceedings will be transcribed and/or video recorded.

### A.        Participants and Attendees

Only Qualified Bidders are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtor in accordance with these Bidding Procedures. Qualified Bidders participating in the Auction must attend the Auction personally or through a duly authorized representative. Subject to the Auction procedures set forth herein, all Qualified Bidders and the Consultation Parties are permitted to attend the Auction; *provided* that the Debtor may, in its sole discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of a Qualified Bidder or otherwise attend the Auction.

Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the Auction or the submission of any bid for any of the Assets and (ii) its Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction is a binding, good-faith, and *bona fide* offer to purchase the Assets identified in such bids.

All Prospective Bidders and Qualified Bidders (including any Stalking Horse Bidder, Successful bidder, and Backup Bidder) shall be deemed to have (i) agreed that all proceedings in the Court related to these Bidding Procedures, the Auction, any other relief requested in the Motion or granted pursuant to the Bidding Procedures Order, or the construction or enforcement of any agreement or any other document directly relating to the sale transaction are core proceedings as described in 28 U.S.C. § 157; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document directly relating to the sale transaction; and (iii) consented to the entry of a final order or judgment by the Court in connection with any disputes relating to these Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document relating directly to the sale transaction, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

Any party in interest may attend the Auction; *provided* that any such party request attendance at least two (2) days prior to the start of the Auction by emailing proposed counsel to the Debtor: (a) Goodwin Procter LLP, The New York Times Building, 620 8th Avenue, New York, NY 10018 Attn: Howard S. Steel (hsteel@goodwinlaw.com); Kizzy L. Jarashow (kjarashow@goodwinlaw.com); Stacy A. Dasaro (sdasaro@goodwinlaw.com); and James Lathrop (jlathrop@goodwinlaw.com) and (b) Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Aaron H. Stulman (astulman@potteranderson.com), Brett M. Haywood (bhaywood@potteranderson.com), and James R. Risener (jrisener@potteranderson.com)).

### B.    Auction Procedures

The Auction shall be governed by the following procedures, subject to the Debtor's right to modify such procedures in its reasonable business judgment (in a manner consistent with its fiduciary duties and in consultation with the Consultation Parties):

1.    <u>Baseline Bids</u>.  Prior to the commencement of the Auction, the Debtor will determine, in its reasonable business judgment (and in consultation with the Consultation Parties) the highest or otherwise best Qualified Bid submitted for the Assets (such Qualified Bid, a "<u>Baseline Bid</u>").  Bidding at the Auction shall commence at the amount of the Baseline Bid.  Prior to the commencement of the Auction, the Debtor will provide all Qualified Bidders with (a) a notice identifying all the Qualified Bidders and which Qualified Bid is the Baseline Bid; and (b) a copy of the Baseline Bid.

2.    <u>Minimum Overbid</u>.  Bidding shall commence at the Baseline Bid.  The first overbid at the Auction shall be in an amount not less than the amount of the Baseline Bid (<u>plus</u> the Bid Protections, if any, if a Stalking Horse Bid is the Baseline Bid) <u>plus</u> $100,000 (the "<u>Minimum Overbid</u>").  At each round of bidding, Qualified Bidders may submit successive bids higher than the Leading Bid (as defined below) from the prior round.  During the Auction, the Debtor may, in its reasonable discretion, announce increases or reductions to Minimum Overbids at any time.

Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by any bid subsequent to the Baseline Bid, the Debtor will, at each round of bidding, consider and/or give effect to (a) any additional liabilities to be assumed by a Qualified Bidder under the bid, including whether such liabilities are secured or unsecured; and (b) any additional costs that may be imposed on the Debtor.  Any subsequent bid made by any Stalking Horse Bidder shall be deemed to have been made in an amount equal to such subsequent bid plus the Bid Protections, if any, to the extent provided for in the Stalking Horse Agreement.

3.    <u>Leading Bid</u>.  After the first round of bidding and between each subsequent round of bidding, the Debtor will announce, after consultation with the Consultation Parties, the bid that it believes to be the highest or otherwise best offer for the Assets (such bid, a "<u>Leading Bid</u>") and describe the material terms thereof.  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the material terms of the Leading Bid.

The Auction will include open bidding in the presence of all other Qualified Bidders.  Each Qualified Bidder shall have the right to be present for all rounds of bidding and to submit additional bids and make modifications to

its Proposed Asset Purchase Agreement at the Auction to improve its bid. The Debtor may, in its reasonable business judgment, negotiate with any and all Qualified Bidders participating in the Auction.

The Debtor shall have the right to determine, in its reasonable business judgment after consultation with the Consultation Parties, which bid is the highest or otherwise best bid with respect to the Assets and, after consultation with the Consultation Parties, reject, at any time, without liability (but only in the absence of gross negligence or willful misconduct), any bid that the Debtor deems to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, these Bidding Procedures, any order of the Court, or the best interests of the Debtor and its estate.

**C.    Auction Results**

1.    <u>Successful Bids</u>.  Immediately prior to the conclusion of the Auction, the Debtor will (a) determine, consistent with these Bidding Procedures and in consultation with the Consultation Parties, which Qualified Bid constitutes the highest or otherwise best bid (such bid, including a Stalking Horse Bid if no additional Qualified Bids are received and no Auction conducted, a "<u>Successful Bid</u>") and (b) notify all Qualified Bidders at the Auction of the identity of the bidder that submitted the Successful Bid (such bidder, a "<u>Successful Bidder</u>") and the amount of the purchase price and other material terms of the Successful Bid.

2.    <u>Backup Bids</u>.  Immediately prior to the conclusion of the Auction, the Debtor will (a) determine, in a manner consistent with these Bidding Procedures and in consultation with the Consultation Parties, which Qualified Bid, other than any Credit Bid, is the Backup Bid; and (b) notify all Qualified Bidders at the Auction of the identity of the Backup Bidder and the amount of the purchase price and other material terms of the Backup Bid.

Except as may otherwise be provided in any Stalking Horse Agreement, a Backup Bid will remain binding on the applicable Backup Bidder until the earlier of (a) the first business day after the closing of the sale transaction with the Successful Bidder for the Assets and (b) thirty (30) days after the Sale Hearing (such date, the "<u>Backup Bid Expiration Date</u>").  If the sale transaction with the Successful Bidder is terminated prior to the Backup Bid Expiration Date, the Backup Bidder shall be deemed the new Successful Bidder for the Assets and shall be obligated to consummate the Backup Bid as if it were the Successful Bid at the Auction.

3.    <u>Notice of Auction Results</u>.  Within one business day after the conclusion of the Auction, the Debtor will file with the Court and cause to be served and published on the Case Website, a notice setting forth the results of the

14

Auction (the "<u>Notice of Auction Results</u>").  The Notice of Auction Results will (i) identify each Successful Bidder and each Backup Bidder; (ii) either include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bid, or provide instructions for accessing each Successful Bid and each Backup Bid free of charge from the Case Website; and (iii) set forth the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Objection Notice Parties of the outcome of the Auction.  The Notice of Auction Results shall also include the deadline to file and serve Adequate Assurance Objections with respect to any Successful Bidder.

**D.    Disposition of Good Faith Deposit**

1.    <u>Prospective Bidders</u>.  Within five (5) business days after the Debtor make final determinations as to which Prospective Bidders qualify as Qualified Bidders, the Escrow Agent shall return to each Prospective Bidder that did not qualify as a Qualified Bidder, as confirmed by the Debtor, such Prospective Bidder's Good Faith Deposit.  Upon the authorized return of a Prospective Bidder's Good Faith Deposit, the bid of such Prospective Bidder shall be deemed terminated and no longer binding against the Prospective Bidder.

2.    <u>Qualified Bidders</u>.

a.    <u>Forfeiture of Good Faith Deposit</u>.  The Good Faith Deposit of a Qualified Bidder shall be forfeited if the Qualified Bidder attempts to withdraw its Qualified Bid, except as may be permitted by these Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Bidding Procedures. The Debtor and its estates shall be entitled to retain the Qualified Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtor and its estate as a result of the Qualified Bidder's failure to adhere to the terms of these Bidding Procedures and/or the relevant Qualified Bid.  If a Qualified Bidder's Good Faith Deposit is deemed forfeited, the Escrow Agent shall release such Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtor within two (2) business days after the Escrow Agent receives written notice by an authorized officer of the Debtor stating that the applicable Qualified Bidder has breached or otherwise failed to satisfy its obligations in accordance with these Bidding Procedures and the applicable Qualified Bid.

b.    <u>Return of Good Faith Deposit</u>.  With the exception of the Good Faith Deposits of the Successful Bidder and the Backup Bidder, the Escrow Agent shall return to any other Qualified Bidder the

Qualified Bidder's Good Faith Deposit, within ten (10) business days after the conclusion of the Auction for the Assets.

c. <u>Backup Bidder</u>. Unless the Backup Bidder becomes the Successful Bidder, the Escrow Agent shall return the Backup Bidder's Good Faith deposit, within ten (10) business days after the occurrence of the applicable Backup Bid Expiration Date; *provided*, *however*, if the Backup Bidder becomes the Successful Bidder, its Good Faith Deposit shall be forfeited if it fails to consummate the sale transaction because of a breach that entitles the Debtor to terminate the applicable asset purchase agreement with such Backup Bidder, and the Debtor and its estate shall be entitled to retain the Backup Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtor and its estate as a result of such breach. If a Backup Bidder's Good Faith Deposit is deemed forfeited, the Escrow Agent shall release such Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtor within two (2) business days after the Escrow Agent receives written notice by an authorized officer of the Debtor stating that the applicable Backup Bidder has breached or otherwise failed to satisfy its obligations in accordance with these Bidding Procedures and the applicable Backup Bidder.

d. <u>Successful Bidder</u>. At the closing of the sale transaction, the Successful Bidder shall be entitled to a credit against the purchase price in the amount of the Successful Bidder's Good Faith Deposit. The Good Faith Deposit of a Successful Bidder shall be forfeited if the Successful Bidder fails to consummate the sale transaction because of a breach that entitles the Debtor to terminate the applicable asset purchase agreement with such Successful Bidder, and the Debtor and its estate shall be entitled to retain the Successful Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtor and its estate as a result of such breach. If a Successful Bidder's Good Faith Deposit is deemed forfeited, the Escrow Agent shall release such Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtor within two (2) business days after the Escrow Agent receives written notice by an authorized officer of the Debtor stating that the Successful Bidder has breached or otherwise failed to satisfy its obligations in accordance with these Bidding Procedures and the Successful Bid.

## VIII. SALE HEARING

The Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) will be subject to Court approval. The hearing to approve the sale transaction consummated in accordance with these Bidding Procedures (except in the case of the sale transaction

16

contemplated by a Backup Bid that subsequently is deemed a Successful Bid) shall take place on **July 25, 2025 at 3:00 p.m. (ET)** (the "Sale Hearing") before the Honorable Craig T. Goldblatt, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

At the Sale Hearing, the Debtor will seek entry of an order (a "Sale Order") approving, among other things, the sale of the Assets to the Successful Bidder or a Stalking Horse Bidder.

The Sale Hearing may be adjourned without further notice other than announcing such adjournment at the Sale Hearing or filing a notice on the Court's docket indicating such adjournment.

The Debtor's presentation to the Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtor's acceptance of such bid. The Debtor will have accepted a Successful Bid only when such Successful Bid has been approved by the Court at the Sale Hearing.

## IX.    RESERVATION OF RIGHTS TO MODIFY BIDDING PROCEDURES

The Debtor reserves the right to, in its reasonable business judgment, after consultation with the Consultation Parties and in a manner consistent with its fiduciary duties and applicable law, (i) modify these Bidding Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth herein, adopt new rules and procedures for conducting the bidding and Auction process so long as any such modifications are disclosed to all Prospective Bidders and Qualified Bidders, as applicable; or (ii) otherwise modify these Bidding Procedures to further promote competitive bidding for, and maximizing the of value of, the Assets, in each case, to the extent not materially inconsistent with these Bidding Procedures or the Bidding Procedures Order.

## X.    NOTICING

### A.    Bid Notice Parties

Qualified Bids must be submitted in writing to the following parties (collectively, the "Bid Notice Parties"): (i) proposed counsel to the Debtor, (a) Goodwin Procter LLP, The New York Times Building, 620 8th Avenue, New York, NY 10018 Attn: Howard S. Steel (hsteel@goodwinlaw.com); Kizzy L. Jarashow (kjarashow@goodwinlaw.com); Stacy A. Dasaro (sdasaro@goodwinlaw.com); and James Lathrop (jlathrop@goodwinlaw.com) and (b) Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Aaron H. Stulman (astulman@potteranderson.com), Brett M. Haywood (bhaywood@potteranderson.com), and James R. Risener (jrisener@potteranderson.com)); (ii) the Debtor's sales agent: Rock Creek Advisors, LLC (Attn: Brian Ayers (bayers@rockcreekfa.com), Jim Gansman (jgansman@rockcreekfa.com), and Tim Peach (tpeach@rockcreekfa.com)); and (iii) counsel for the Consultation Parties.

### B.     Sale Notice Parties

The "Sale Notice Parties" shall include the following persons and entities: (i) the Consultation Parties (as applicable); (ii) all persons and entities known by the Debtor to have asserted any lien, claim, interest, or encumbrance in the Assets (for whom identifying information and addresses are available to the Debtor); (iii) all relevant non-debtor parties (each, a "Counterparty") to any Contract that may be assumed or rejected in connection with the sale transaction; (iv) all of the Debtor's known creditors (for whom identifying information and addresses are available to the Debtor); (v) any party that has filed a proof of claim in this chapter 11 case; (vi) any governmental authority known to have a claim against the Debtor in this chapter 11 case; (vii) the office of the U.S. Trustee; (viii) all applicable federal, state, and local taxing authorities, including the Internal Revenue Service; (ix) the United States Securities and Exchange Commission; (x) the United States Attorney's Office for the District of Delaware; (xi) United States Attorney General's Office for the District of Delaware; (xii) the Office of the Attorney General and the Secretary of State in each state in which the Debtor operates; (xiii) the Antitrust Division of the United States Department of Justice; (xiv) the Federal Trade Commission; (xv) all parties on the Debtor's creditor matrix; (xvi) all of the parties entitled to notice pursuant to Bankruptcy Rule 2002; (xvii) counsel to any Stalking Horse Bidder; and (xviii) all other parties as directed by the Court.

### C.     Sale Notice and Publication Notice

**No later than one business day after the entry of the Bidding Procedures Order**, the Debtor will file with the Court, serve on the Sale Notice Parties, and cause to be published on the Case Website a notice (the "Sale Notice") setting forth (A) a description of the Assets available for sale in accordance with these Bidding Procedures; (B) the date, time, and location of the Auction and Sale Hearing; (C) the Sale Objection Deadline, the Supplemental Sale Objection Deadline, and the procedures for filing such objections; and (D) if applicable, a summary of the material terms of any Stalking Horse Agreement, including the terms and conditions of any Bid Protections to be provided thereunder, as of the date of the Sale Notice.

As soon as practicable but **no later than five (5) business days after the entry of the Bidding Procedures Order**, the Debtor may, in its discretion, cause the information substantially in the form contained in the Sale Notice, with such modifications as may be appropriate for purposes of publication, to be published once in the national edition of *USA Today* or *The New York Times*.

### D.     Sale Objections and Supplemental Sale Objections

Except objections to the conduct of the Auction, all objections to a sale of the Assets, including any objection to a sale of the Assets free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each such objection, a "Sale Objection"), shall, by no later than **July 17, 2025 at 4:00 p.m. (ET)** (the "Sale Objection Deadline"), be filed with Court and served on the following parties (collectively, the "Objection Notice Parties"): (i) proposed counsel to the Debtor, (a) Goodwin Procter LLP, The New York Times Building, 620 8th Avenue, New York, NY 10018 Attn: Howard S. Steel (hsteel@goodwinlaw.com); Kizzy L. Jarashow (kjarashow@goodwinlaw.com); Stacy A. Dasaro

(sdasaro@goodwinlaw.com); and James Lathrop (jlathrop@goodwinlaw.com) and (b) Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Aaron H. Stulman (astulman@potteranderson.com), Brett M. Haywood (bhaywood@potteranderson.com), and James R. Risener (jrisener@potteranderson.com)); (ii) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Linda J. Casey (linda.casey@usdoj.gov)); (iii) if any statutory committee has been appointed in this chapter 11 case, counsel to such committee; (iv) if applicable, counsel for the Successful Bidder; and (v) if applicable, counsel for the Backup Bidder.

Following service of the Notice of Auction Results, parties in interest may object solely with respect to the conduct of the Auction (each a "Supplemental Sale Objection") by **July 23, 2025 at 5:00 p.m. (ET)** (the "Supplemental Sale Objection Deadline").

### E.    Notices Regarding Assumption and Assignment of Contracts

The Debtor will provide all notices regarding the proposed assumption and assignment of Contracts in accordance with the Assumption and Assignment Procedures set forth in the Bidding Procedures Order.

## XI.    CONSULTATION BY THE DEBTOR

A.    Throughout the sale process, the Debtor and its advisors will consult with the Consultation Parties as provided in these Bidding Procedures, or as is otherwise necessary or appropriate, as determined in the Debtor's business judgment.

B.    The Debtor shall consult with the Consultation Parties in good faith regarding the sale process, any diligence and other information requested by the Consultation Parties, and the Debtor will provide to the Consultation Parties reports concerning the sale process, including parties contacted, buyer feedback, copies of all letters of intent, drafts of definitive agreements and updates on proposals. For the avoidance of doubt, and without limitation, the Debtor shall consult with the Consultation Parties on the selection of the Baseline Bid, how the Auction is conducted, any additional Auction procedures, adjourning the Auction, and selecting the Successful Bidder and the Backup Bidder.

C.    **Notwithstanding the foregoing, the Debtor will not consult with or provide copies of any bids or other confidential information to any Consultation Party or any insider or affiliate of the Debtor if such party is an active bidder for the Assets at the applicable time.** If a member of the Committee submits a Qualified Bid for the Assets, the Committee will maintain its consultation rights as a Consultation Party; *provided* that the Committee shall exclude the bidding Committee member from any discussions or deliberations regarding a transaction involving the relevant Assets, and shall not provide any confidential information regarding the Assets or otherwise involving the sale process to such bidding committee member; *provided further* that, upon written notice by such Committee member (which may be via email) to the Debtor, or express confirmation on the record during the Auction, of its withdrawal as a bidder for the Debtor's assets, such Committee member's rights as a Consultation Party (as a Committee member) shall be restored.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Bidding Procedures or the Bidding Procedures Order shall not in any way limit the Debtor's discretion and shall not include the right to veto any decision made by the Debtor in the exercise of its reasonable business judgment.

**<u>Exhibit 2</u>**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
In re:                                                      :        Chapter 11
                                                            :
Charter School Capital, Inc.,[1]                            :        Case No. 25-11016 (CTG)
                                                            :
            Debtor.                                         :
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION,**
<u>**SALE HEARING AND OTHER DEADLINES RELATED THERETO**</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On [●], 2025, the above-captioned debtor and debtor in possession (the "<u>Debtor</u>") in the above-captioned chapter 11 case filed with the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") a motion [Docket No. ●] (the "<u>Motion</u>") seeking entry of (a) an order (the "<u>Bidding Procedures Order</u>") (i) approving bidding procedures (the "<u>Bidding Procedures</u>")[2] to be used in connection with the sale (each, a "<u>Sale</u>") of all, substantially all, or a portion of the Debtor's assets (the "<u>Assets</u>"); (ii) authorizing the Debtor to designate a Stalking Horse Bidder and provide Bid Protections in accordance with the Stalking Horse Designation Procedures; (iii) scheduling (A) an auction of the Assets (the "<u>Auction</u>") on, and (B) a final hearing to consider approval of, the proposed Sale (the "<u>Sale Hearing</u>"); (iv) approving the form and manner of notice of the Bidding Procedures, the Auction and the Sale Hearing; (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "<u>Contracts</u>") in connection with the Sale; (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract and certain other information regarding the potential assumption and assignment of Contracts in connection with a Sale; and (vii) granting related relief; and (b) an order (the "<u>Sale Order</u>") (i) authorizing the sale of the Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Debtor and any Successful Bidder, with liens to attach to the proceeds of the Sale; (ii) authorizing the assumption and assignment of certain Contracts in connection with approved Sale; and (iii) granting related relief.

---

[1] The Debtor's mailing address is 9450 SW Gemini Dr., PMB 559064, Beaverton, OR, 97008-7105, and the last four digits of the Debtor's federal tax identification number are 4278.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order.  Any summary of the Bidding Procedures or the Bidding Procedures Order contained herein is qualified in its entirety by the actual terms thereof.  To the extent that there is any inconsistency between any summary in this notice and either of the Bidding Procedures or the Bidding Procedures Order, the actual terms in those documents shall control.

On [●], 2025, the Court entered the Bidding Procedures Order [Docket No. ●].

## ASSETS FOR SALE

The Debtor intends to sell all, substantially all, or a portion of its Assets, including its owned real property, intellectual property, and all claims, causes of action, lawsuits, judgments, and demands of any nature, in each case, available to or being pursued by the Debtor.

A Prospective Bidder may bid on the Assets, subject to the conditions set forth in the Bidding Procedures and the Bidding Procedures Order.

The ability to undertake and consummate a sale of the Assets shall be subject to competitive bidding, as set forth herein, and approval by the Court. In addition to any Stalking Horse Bid, and as set forth herein, the Debtor will consider bids for the Assets from other parties.

Parties may submit bids for all or some of the Debtor's business and assets, including for parts of the Debtor's business or assets (each, a "Partial Bid"), which bids may be combined with other Partial Bids or be considered independently and/or together with the liquidation value (as reasonably determined by the Debtor in good faith) of the Debtor's business or assets that are not the subject of other Partial Bids to be deemed a Qualified Bid.

Any party interested in submitting a bid for any of the Debtor's Assets should contact the Debtor's sales agent:

**Rock Creek Advisors, LLC**
Brian Ayers (bayers@rockcreekfa.com)
Jim Gansman (jgansman@rockcreekfa.com)
Tim Peach (tpeach@rockcreekfa.com)]

## KEY DATES AND DEADLINES

### A.    Bid Deadline

Any Prospective Bidder that intends to participate in the Auction must submit in writing to the Bid Notice Parties a Qualified Bid **on or before [●], 2025 at 5:00 p.m. (ET)** (the "Bid Deadline").

The Qualified Bid requirements are set forth in the Bidding Procedures.

### B.    Stalking Horse Bidder Designation

The Debtor may designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement **no later than [●], 2025**, which deadline may be extended by the Debtor (after consultation with the Consultation Parties).

**C.    Auction**

If the Debtor receives more than one Qualified Bid (including a combination of bids that, when considered together, constitute a Qualified Bid) for the Assets, the Debtor will conduct an Auction for the Assets.  If any Stalking Horse Bid is the only Qualified Bid received in respect of the Assets subject to such Stalking Horse Bid, the Debtor will not conduct an Auction for such applicable Assets and will seek approval of such Stalking Horse Bid at the Sale Hearing.

The Auction, if required, will be conducted either at the offices of Goodwin Procter LLP, The New York Times Building, 620 8th Avenue, New York, NY 10018 or virtually, on **[●], 2025, at 10:00 a.m. (ET)** or at such other date, time or location as designated by the Debtor, after consulting with the Consultation Parties.  If the Debtor conducts the Auction virtually, the Debtor will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail.  The Debtor will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Auction to Qualified Bidders, and will cause publication of such change to occur on the website maintained by the Debtor's claims and noticing agent in this chapter 11 case, located at https://dm.epiq11.com/CharterSchoolCapital (the "Case Website").

Within one business day after the conclusion of the Auction, the Debtor will file with the Court and cause to be served and published on the Case Website, a notice of the results of the Auction, which will, among other things, (A) identify the Successful Bidder and Backup Bidder(s); (B) either include a copy of the Successful Bid and the Backup Bid or a summary of the material terms of such bids, including any assumption and assignment of Contracts contemplated thereby, or provide instructions for accessing the Successful Bid and the Backup Bid free of charge from the Case Website; and (C) set forth the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise parties in interest of the outcome of the Auction.

If the Debtor determines not to hold an Auction for some or all of the Assets, the Debtor shall file with the Court, and cause to be served and published on the Case Website, a notice containing the following information (as applicable): (a) a statement that the Auction for the relevant Assets has been canceled; (b) the identity of the Successful Bidder; (c) either include a copy of the Successful Bid or a summary of the material terms of such bid, including any assumption and assignment of Contracts contemplated thereby, or provide instructions for accessing the Successful Bid free of charge from the Case Website; and (d) the date, time, and location of the Sale Hearing.

**D.    Objection Deadlines**

1.    <u>Sale Objection Deadline</u>.  Except objections to the conduct of the Auction, all objections to a sale of the Assets, including any objection to a sale of the Assets free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code, must be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (ii) filed with the Court by **no later than [●], 2025 at 4:00 p.m. (ET)** and served on the following parties (collectively,

the "Objection Notice Parties"): (i) proposed counsel to the Debtor, (a) Goodwin Procter LLP, The New York Times Building, 620 8th Avenue, New York, NY 10018 Attn: Howard S. Steel (hsteel@goodwinlaw.com); Kizzy L. Jarashow (kjarashow@goodwinlaw.com); Stacy A. Dasaro (sdasaro@goodwinlaw.com); and James Lathrop (jlathrop@goodwinlaw.com) and (b) Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Aaron H. Stulman (astulman@potteranderson.com), Brett M. Haywood (bhaywood@potteranderson.com), and James R. Risener (jrisener@potteranderson.com)); (ii) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Linda J. Casey (linda.casey@usdoj.gov)); (iii) if any statutory committee has been appointed in this case, counsel to such committee; (iv) if applicable, counsel for the Successful Bidder; and (v) if applicable, counsel for the Backup Bidder.

2. <u>Cure Objection Deadline</u>. Any objection to the Debtor's proposed Cure Costs (each such objection, a "<u>Cure Objection</u>") shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) filed with the Court by **no later than [●], 2025, at 4:00 p.m. (ET)**; and (c) served on the Objection Notice Parties.

3. <u>Supplemental Sale Objection Deadline</u>. Following service of the Notice of Auction Results, parties may object solely with respect to the particular terms of a proposed Sale or the Successful Bid or Backup Bid. Any Supplemental Sale Objection must be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (b) filed with the Court by **no later [●], 2025, at 4:00 p.m. (ET)** (the "<u>Supplemental Sale Objection Deadline</u>") and served on the Objection Notice Parties.

4. <u>Adequate Assurance Objection</u>. Any Adequate Assurance Objection to the proposed assumption and assignment of a Contract, the subject of which objection is the Successful Bidder's proposed form of adequate assurance of future performance with respect to the Contract (each such objection, an "<u>Adequate Assurance Objection</u>"), shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) filed with the Court by **no later than [●], 2025 at 4:00 p.m. (ET)**; and (c) served on the Objection Notice Parties.

**E.     Sale Hearing**

The Sale Hearing shall take place on **[●], 2025 at [●:● a/p.m.] (ET)** before The Honorable Craig T. Goldblatt, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

## RESERVATION OF RIGHTS TO MODIFY BIDDING PROCEDURES

The Debtor reserves the right to, in its reasonable business judgment and after consultation with the Consultation Parties in a manner consistent with its fiduciary duties and applicable law, modify the Bidding Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth therein; adopt new rules and procedures for conducting the bidding and Auction process so long as any such modifications are disclosed to all Prospective Bidders and Qualified Bidders, as applicable; or otherwise modify these Bidding Procedures to further promote competitive bidding for and maximizing the of value of the Assets, in each case, to the extent not materially inconsistent with the Bidding Procedures or the Bidding Procedures Order.

## ADDITIONAL INFORMATION

Copies of the Motion, the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge by visiting the Case Website located at https://dm.epiq11.com/CharterSchoolCapital.

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THE CHAPTER 11 CASE MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BIDDING FOR, AND AUCTION OF, ANY OF THE DEBTOR'S ASSETS.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, INCLUDING THE FAILURE TO FILE ANY SUCH OBJECTION BY THE APPLICABLE OBJECTION DEADLINE, SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING, AT THE SALE HEARING OR THEREAFTER, ANY SUCH OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, THE CONSUMMATION OF ANY APPLICABLE SALE, INCLUDING THE SALE OF ANY ASSETS TO A SUCCESSFUL BIDDER FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE OR THE TERMS OF THE STALKING HORSE AGREEMENT OR OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE DEBTOR.**

Dated: _____, 2025
Wilmington, Delaware

POTTER ANDERSON & CORROON LLP

*/s/* _____
Aaron H. Stulman (No. 5807)
Brett M. Haywood (No. 6166)
James R. Risener III (No. 7334)
Ethan H. Sulik (No. 7270)
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Tel: (302) 984-6000
Facsimile: (302) 658-1192
Email: astulman@potteranderson.com
        bhaywood@potteranderson.com
        jrisener@potteranderson.com
        esulik@potteranderson.com

- and -

GOODWIN PROCTER LLP
Howard S. Steel (admitted *pro hac vice*)
Stacy Dasaro (admitted *pro hac vice*)
Kizzy L. Jarashow (admitted *pro hac vice*)
James Lathrop (admitted *pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
Tel: (212) 813-8800
Facsimile: (212) 355-3333
Email: hsteel@goodwinlaw.com
        kjarashow@goodwinlaw.com
        sdasaro@goodwinlaw.com
        jlathrop@goodwinlaw.com

*Proposed Counsel for Debtor and Debtor-in-Possession*

## Exhibit 3

**Assumption and Assignment Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - -- - - - - - - - - - - - - - - - - - - -  x
                                                              :
In re:                                                        :        Chapter 11
                                                              :
Charter School Capital, Inc.,[1]                              :        Case No. 25-11016 (CTG)
                                                              :
                 Debtor.                                      :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION
AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On [●], 2025, the above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case filed with the United States Bankruptcy Court for the District of Delaware (the "Court") a motion [Docket No. ●] (the "Motion") seeking entry of (a) an order (the "Bidding Procedures Order") (i) approving bidding procedures (the "Bidding Procedures")[2] to be used in connection with a sale (the "Sale") of all, substantially all, or a portion of the Debtor's assets (the "Assets"); (ii) authorizing the Debtor to designate a Stalking Horse Bidder and provide Bid Protections in accordance with the Stalking Horse Designation Procedures; (iii) scheduling (A) an auction of the Assets (the "Auction"), and (B) a final hearing to consider approval of the proposed Sale (the "Sale Hearing"); (iv) approving the form and manner of notice of the Bidding Procedures, the Auction and the Sale Hearing; (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with any Sale; (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Cost") and certain other information regarding the potential assumption and assignment of Contracts in connection with the Sale; and (vii) granting related relief; and (b) an order (the "Sale Order") (i) authorizing the sale of the Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Debtor and any Successful Bidder (as defined in the Bidding

---

[1] The Debtor's mailing address is 9450 SW Gemini Dr., PMB 559064, Beaverton, OR, 97008-7105, and the last four digits of the Debtor's federal tax identification number are 4278.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order.  Any summary of the Bidding Procedures or the Bidding Procedures Order contained herein is qualified in its entirety by the actual terms thereof.  To the extent that there is any inconsistency between any summary in this notice and either of the Bidding Procedures or the Bidding Procedures Order, the actual terms in those documents shall control.

Procedures), with liens to attach to the proceeds of the Sale; (ii) authorizing the assumption and assignment of certain Contracts in connection with approved Sale; and (iii) granting related relief.

On [●], 2025, the Court entered the Bidding Procedures Order [Docket No. ●].

**You are receiving this Notice because you may be a Counterparty to a Contract of the Debtor that may be assumed and assigned to the Successful Bidder for the Debtor's Assets.**

## CURE COSTS

In accordance with the Assumption and Assignment Procedures and the Bidding Procedures Order, the Debtor may, in connection with the Sale with the Successful Bidder at the Auction, seek to assume and assign to the Successful Bidder certain of its Contracts. Each of the Contracts that potentially could be assumed and assigned in connection with the Sale, together with the Debtor's calculation of Cure Costs with respect to such Contracts, is set forth on Schedule 1 hereto. The inclusion of any Contract on Schedule 1 does not constitute an admission by the Debtor, a Stalking Horse Bidder, any Successful Bidder, or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract ultimately will be assumed or assigned. All rights of the Debtor with respect thereto are reserved.

In addition, to the extent that any of the Cure Costs set forth on Schedule 1 do not reflect (i) postpetition payments that have been made by the Debtor in respect of applicable Cure Costs or (ii) any payments that are made by the Debtor in respect of such Cure Costs after the filing of this Notice, the respective amounts required to be paid to cure any existing defaults under the applicable Contracts shall be reduced by any such corresponding postpetition payments, and the Debtor reserves its rights to update the Cure Costs set forth on Schedule 1 accordingly, either by filing a supplemental notice with the Court or by written notice to the applicable Counterparty.

## CURE OBJECTIONS

### A.    Cure Objection Deadline

Any objection to the Debtor's proposed Cure Costs (each such objection, a "Cure Objection") shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) filed with the Court by **no later than [●], 2025, at 4:00 p.m. (ET)**; and (c) served on the following parties (collectively, the "Objection Notice Parties"): (i) proposed counsel to the Debtor, (a) Goodwin Procter LLP, The New York Times Building, 620 8th Avenue, New York, NY 10018 Attn: Howard S. Steel (hsteel@goodwinlaw.com); Kizzy L. Jarashow (kjarashow@goodwinlaw.com); Stacy A. Dasaro (sdasaro@goodwinlaw.com); and James Lathrop (jlathrop@goodwinlaw.com) and (b) Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Aaron H. Stulman (astulman@potteranderson.com), Brett M. Haywood (bhaywood@potteranderson.com), and James R. Risener (jrisener@potteranderson.com)); (ii) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Linda J. Casey (linda.casey@usdoj.gov)); (iii) if any statutory committee has been appointed in this case, counsel

to such committee; (iv) if applicable, counsel for the Successful Bidder; and (v) if applicable, counsel for the Backup Bidder.

### B.      Resolution of Cure Objections

Pursuant to the Bidding Procedures Order, the Debtor or Successful Bidder (if applicable) and the objecting Counterparty must first confer in good faith to attempt to resolve the Cure Objection without Court intervention. If a Cure Objection is resolved in a manner that is not in the best interests of the Debtor and its estate, whether or not such resolution occurs prior to or after the closing of the Sale, the Debtor and the Successful Bidder may determine that any Contract subject to such resolved Cure Objection no longer will be assumed and assigned.

If a timely filed Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing, or, with the agreement of the Debtor and the Successful Bidder, be adjourned to a subsequent hearing (each an "Adjourned Cure Objection"). Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Contract that was the subject of such Adjourned Cure Objection shall, at the election of the Successful Bidder, and subject to the Debtor's rights set forth in the Bidding Procedures Order, be deemed assumed and assigned to the Successful Bidder as of the closing of the Sale.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE COST TO CURE ANY DEFAULTS UNDER THE APPLICABLE CONTRACT, AND THE CURE COSTS SET FORTH ON <u>SCHEDULE 1</u> HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE CONTRACT AND SATISFY THE REQUIREMENTS OF SECTION 365(b) OF THE BANKRUPTCY CODE, AND THE COUNTERPARTY TO THE CONTRACT SHALL BE DEEMED BOUND BY AND TO HAVE CONSENTED TO THE CURE COSTS; *PROVIDED, HOWEVER*, THAT A COUNTERPARTY TO AN ASSUMED CONTRACT SHALL NOT BE BARRED FROM SEEKING ADDITIONAL AMOUNTS ON ACCOUNT OF ANY DEFAULTS OCCURRING BETWEEN THE SERVICE OF THE ASSUMPTION AND ASSIGNMENT NOTICE AND THE ASSUMPTION OF THE CONTRACT.**

### <u>NOTICE OF AUCTION RESULTS</u>

The Auction, if required, will be conducted either at the offices of Goodwin Procter LLP, The New York Times Building, 620 8th Avenue, New York, NY 10018 or virtually, on **[●], 2025, at 10:00 a.m. (ET)** or at such other date, time or location as designated by the Debtor, after consulting with the Consultation Parties. If the Debtor conducts the Auction virtually, the Debtor will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail. The Debtor will provide notice (via electronic mail or otherwise) of any change in the date, time, or location of the Auction to Qualified Bidders and the Consultation Parties and will cause publication of such change to occur on the Case Website (as defined below).

Within one business day after the conclusion of the Auction, the Debtor shall file with the Court and cause to be served and published on the website maintained by the Debtor's claims and noticing agent in this chapter 11 case located at https://dm.epiq11.com/CharterSchoolCapital (the "Case Website") a notice of the results of the Auction, which will, among other things, (A) identify the Successful Bidder(s) and Backup Bidder(s); (B) either include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, or provide instructions for accessing each Successful Bid and each Backup Bid free of charge from the Case Website; and (C) set forth the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise parties in interest of the outcome of the Auction.

## ADEQUATE ASSURANCE OBJECTIONS

### A.    Adequate Assurance Objection Deadline

Any Counterparty to a Contract that wishes to object to the proposed assumption and assignment of a Contract, the subject of which objection is the Successful Bidder's proposed form of adequate assurance of future performance with respect to the Contract (each such objection, an "Adequate Assurance Objection"), must file with the Court and serve on the Objection Notice Parties an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, by **[●], 2025 at 4:00 p.m. (ET)**.

### B.    Resolution of Adequate Assurance Objections

Pursuant to the Bidding Procedures Order, the Debtor, the Successful Bidder and the objecting Counterparty must first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the Successful Bidder (or any other relevant assignee) shall be determined by the Court at the Sale Hearing or, at the option of the Debtor and the Successful Bidder, be adjourned to a subsequent hearing, with notice to the party having filed the Adequate Assurance Objection.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND/OR ASSIGNMENT OF THE APPLICABLE CONTRACT WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE. THE APPLICABLE SUCCESSFUL BIDDER SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTIONS 365(b)(1)(C), 365(f)(2)(B) AND, IF APPLICABLE, 365(b)(3), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR ANY OTHER DOCUMENT.**

## SALE HEARING

The Sale Hearing shall take place on **[], 2025 at [●:● a/p.m.] (ET)** before The Honorable Craig T. Goldblatt, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

## ADDITIONAL INFORMATION

Copies of the Motion, the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge by visiting the Case Website.

Dated: _____, 2025
Wilmington, Delaware

POTTER ANDERSON & CORROON LLP

/s/
Aaron H. Stulman (No. 5807)
Brett M. Haywood (No. 6166)
James R. Risener III (No. 7334)
Ethan H. Sulik (No. 7270)
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Tel: (302) 984-6000
Facsimile: (302) 658-1192
Email: astulman@potteranderson.com
        bhaywood@potteranderson.com
        jrisener@potteranderson.com
        esulik@potteranderson.com

- and -

GOODWIN PROCTER LLP
Howard S. Steel (admitted *pro hac vice*)
Stacy Dasaro (admitted *pro hac vice*)
Kizzy L. Jarashow (admitted *pro hac vice*)
James Lathrop (admitted *pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
Tel: (212) 813-8800
Facsimile: (212) 355-3333
Email: hsteel@goodwinlaw.com
        kjarashow@goodwinlaw.com
        sdasaro@goodwinlaw.com
        jlathrop@goodwinlaw.com

*Proposed Counsel for Debtor and Debtor-in-Possession*

**<u>Schedule 1</u>**