IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | Chapter 11 |
| In re: | : | |
| | : | Case No. 25-11016 (CTG) |
| Charter School Capital, Inc.,[1] | : | |
| | : | |
| Debtor. | : | Hearing Date: July 2, 2025 at 11:00 a.m. (ET) |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | Re: Docket Nos. 32 & 55 |

## DEBTOR'S REPLY
## TO ORTHOGON'S OBJECTION
## TO BIDDING PROCEDURES MOTION

Charter School Capital, Inc., the above-captioned debtor and debtor-in-possession ("CSC" or the "Debtor") hereby submits this reply (the "Reply") in response to Orthogon's[2] Limited Objection and Reservation of Rights (the "Objection")[3] to the Debtor's Bidding Procedures Motion.[4] In support of this Motion, the Debtor relies upon and incorporates by reference the *Supplemental Declaration of Brian Ayers in Support of the Bidding Procedures Motion and Debtor's Reply* (the "Ayers Declaration"), filed contemporaneously herewith. In further support of this Reply, the Debtor represents as follows:

---

[1] The Debtor's mailing address is 9450 SW Gemini Dr., PMB 559064, Beaverton, OR, 97008-7105, and the last four digits of the Debtor's federal tax identification number are 4278.

[2] "Orthogon" means collectively, Orthogon Charter School Special Opportunities LLP, Orthogon Charter School Special Opportunities II, LP and Orthogon Charter School Special Opportunities III, LLC.

[3] Docket No. 55.

[4] *Debtor's Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtor's Assets, (B) Authorizing the Debtor to Designate One or More Stalking Horse Bidders and to Provide Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale* ("Bidding Procedures Motion") [Docket No. 32]. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion.

**PRELIMINARY STATEMENT**

The Bidding Procedures were designed to maximize value for all stakeholders—*including Orthogon*—and should be approved. For the reasons set forth herein, the Debtor submits that the relief sought in the Objection – seeking to extend the proposed bidding procedures schedule (the "Sale Timeline") without any stated cause and to provide consultation rights to Orthogon – should be denied.

The Sale Timeline is appropriately tailored to ensure a value-maximizing process, while avoiding value-destructive delays for at least two important reasons.

First, the Debtor does not have the liquidity to fund an extended sale process. While the Debtor was fortunate enough to secure DIP financing on a very short timeline, that financing is not enough to fund a process that extends beyond a July 29, 2025 target sale closing date.[5] Indeed, the Debtor's Money To Run Your School business will lack access to capital to finance charter schools' operational expenses.

Second, contrary to Orthogon's unsupported conjecture, Rock Creek has done the work to "get up to speed," is actively engaging with numerous potential bidders, and is running a value-maximizing process to sell substantially all of the Debtor's assets as a going concern.

Thus, the Debtor has provided ample evidence and justification for the Sale Timeline, and Orthogon has offered no evidence to the contrary.

Orthogon's request for consultation rights ought to be rejected because third-party fiduciaries are already in control of and are overseeing the sale process.

---

[5] As reflected in the Approved Budget annexed to the DIP Motion (as defined below), the Debtor's ending cash position as of August 1, 2025 is expected to be approximately $103,441.

2

The remainder of issues raised in the Objection are premature sale issues and are not relevant to the relief being requested in the Bidding Procedures Motion.

For all of the reasons more fully set forth herein, the Objection should be overruled and the Bidding Procedures Order should be entered.

**REPLY**

### I. The Debtor's Proposed Sale Timeline Is Value-Maximizing And Should Not Be Extended.

1. Orthogon argues the Sale Timeline is too short, but does not identify how much more time is needed, or why. Obj. ¶¶ 11-15. Instead, Orthogon argues—without any evidence or support—that the Sale Timeline is "unsupported" and will "discourage a competitive bidding process," because the Debtor did not have a stalking horse bidder on the Petition Date, the Debtor lacks justification for its stated liquidity challenges, Rock Creek cannot "get up to speed, conduct a fulsome marketing process and execute a transaction for the sale of the Debtor's assets," and improperly implies that the transaction involving the "Potential Acquiror may be designed to be a foregone conclusion." Obj. ¶¶ 12, 15. While it is unclear what Orthogon's motivation is in filing the Objection and making its conclusory accusations, it is clear that Orthogon's contentions are not supported by the facts at hand, namely: that a robust marketing and sales process is well underway and that the Debtor, its independent restructuring committee, and its retained professionals believe that that process will result in a value maximizing transaction—within the existing Sale Timeline—for the benefit of all of the Debtor's stakeholders, including Orthogon.

2. Delaware courts routinely approve bidding procedures "when they provide a benefit to the estate by maximizing the value of the assets." *In re Dura Auto. Sys.*, 2007 Bankr. No. 06-11202 (KJC) LEXIS 2764, *253 (Bankr. D. Del 2007) ("The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate").

3

Furthermore, bidding procedures are to be approved when they are "reasonable and appropriate under the circumstances." Bidding procedures are meant to encourage a fair and open sale and auction process that provides the most value to the debtor and its estate. *Id.*, 2007 Bankr. LEXIS 2764, *254. Moreover, courts in this district have approved timelines that are substantially the same as the Sale Timeline. *See, e.g.*, *In re Express, Inc.*, Case No. 24-10831 (KBO) (Bankr. D. Del. June 6, 2024) [Docket No. 427] (approving bidding procedures order with a sale hearing 8 days later and 53 days after petition date); *In re Unconditional Love Inc.*, Case No. 23-11759 (MFW) (Bankr. D. Del. (Nov. 20, 2023) [Docket No. 153] (approving bidding procedures with a sale hearing 17 days later and 49 days after petition date); *In re iMedia Brands*, Case No. 23-1052 (KBO) (Bankr. D. Del. Aug. 3, 2023) [Docket No. 345] (approving bidding procedures order with a sale hearing 11 days later and 47 days after petition date); *In re Virgin Orbit, LLC*, Case No. 23-10405 (KBO) (Bankr. D. Del., May 1, 2023) [Docket No. 201] (approving bidding procedures order with a sale hearing 24 days later and 49 days after the petition date).

3.  None of Orthogon's cited authority suggests otherwise or even addresses whether a proposed sale timeline is appropriate.

4.  Orthogon cites *Crown Village* for the proposition that a sale process should be designed to foster a competitive process and not chill bids. Obj. ¶¶ 14 (citing *In re Crown Vill. Farm, LLC*, 415 B.R. 86, 93 n.4 (Bankr. D. Del. 2009)). However, the matter being adjudicated in *Crown Village* was a motion to dismiss a bankruptcy proceeding, not the consideration of

4

proposed sale procedures. *In re Crown Vill. Farm, LLC*, 415 B.R. 86, 93 n.4 (Bankr. D. Del. 2009).[6] Thus, *Crown Village* is not instructive.

5. Orthogon also cites *Lionel* and *Gulf Coast* for the proposition that the Sale Timeline lacks justification. Obj. ¶¶ 13-14. Neither case helps Orthogon because the issue in those cases was whether estate assets could be disposed of via a section 363 sale rather than a plan process, an issue that is not at play here. *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel)*, 722 F.2d 1063, 1070-72 (2d Cir. 1983) (overturning a bankruptcy court order approving the sale of stock in a subsidiary because the debtor-in-possession proffered no "business justification" for short-circuiting the Chapter 11 plan process); *Gulf Coast Oil Corp.*, 404 B.R. 407, 427-28 (Bankr. S.D. Tex. 2009) (court did not approve proposed 363 sale and required assets be disposed via a chapter 11 plan confirmation process). In *Gulf Coast*, the debtor failed to produce evidence supporting the expeditious sale timeline. *Id.*

6. Here, unlike the debtor in *Gulf Coast*, the Debtor has provided ample support that it has a "need to sell" and a "need for speed," given its diminishing liquidity and the ongoing business disruption resulting from Bank of America's failure to continue funding its Money to Run business line. Ayers Decl. ¶6. The Debtor has a finite window of opportunity to execute on what is expected to be a value-maximizing sale transaction—one that might very well result in sizable recoveries in the Chapter 11 Case—but that window is quickly closing. Where, as here, there is real risk of diminution of value, and the Debtor has produced evidence that supports that the

---

[6] In a footnote commenting on the proposed sale process in the context of determining if dismissal was warranted, the *Crown Village* court noted that it would not allow anything to "chill" an active marketing process in response to a proposed breakup fee—not a comment on the proposed sale timeline. In full, the *Crown Village* footnote states "the Court will not allow anything to chill an active marketing and auction process. <u>As an example, the present proposed bidding procedures which provide a break up fee to the *Parents/ Guarantors* is unacceptable</u>." *Id.* at 93 n.4 (emphasis added).

process is working and the timeline sufficient, ample cause exists to approve an expedited sale timeline. *Lionel*, 722 F.2d at 1070-72.

7. Orthogon has presented nothing more than conclusory statements to support its claims that the Sale Timeline is inadequate, and conclusory statements, alone, are insufficient in light of the Debtor's competing evidence. *Lionel*, 722 F.2d at 1071 (a party objecting to a sale "is required to produce some evidence respecting its objections."); *Gulf Coast Oil Corp.*, 404 B.R. at 427-28 (finding an expedited section 363 sale is warranted when the debtor "shows that there is a need to sell" and a "need for speed.").

8. By contrast, the Debtor's evidence clearly and unequivocally supports the need for the proposed Sale Timeline and the appropriate exercise of the Debtor's business judgment in requesting that Sale Timeline.

### A. The Debtor Has Insufficient Liquidity To Extend The Sale Process.

9. Orthogon argues that the Debtor has not justified the Sale Timeline based on liquidity restraints. Obj. ¶ 1 and n.4. As Orthogon acknowledges, the Debtor filed this Chapter 11 Case with approximately $1.29 million cash on hand. *Id.* At that time, while tight, the Debtor expected to have sufficient cash to run a process in accordance with the Sale Timeline. *See* Hr'g Tr. June 9, 2025 14:11-13 ("we prepared an analysis that projects there will be sufficient cash to run this case through the sale process."). The Sale Timeline was carefully crafted by the Debtor after balancing the need for a robust marketing and sales process against the Debtor's limited liquidity and the value-destructive impact that a protracted process would have on its business. Ayers Decl. ¶ 5.

10. In fact, since the Petition Date, the Debtor has experienced significant disruption to its "Money To Run Your School" line of business due to Bank of America's failure to honor

funding requests and was forced to source DIP financing as a proposed solution. *See* Ayers DIP Decl. ¶¶ 10-15.[7] In addition, the Debtor has received a request for substantial funding in the final week of July, for which the Debtor lacks a funding source. Ayers Decl. ¶ 7. Moreover, the Debtor has been in ongoing discussions regarding new investment opportunities for its Money to Run Your School business that cannot materialize until the Debtor's post-sale pathway is solidified. Ayers Decl.¶ 7. The details concerning the Debtor's need for DIP financing are set forth in the DIP Motion and Ayers DIP Declaration. While the DIP financing will help the Debtor avoid immediate and irreparable harm to its Money to Run business, it is not a long-term solution. The proposed DIP Budget clearly demonstrates that, even with the DIP financing, the Debtor will run out of money at the end of July 2025. Ayers Decl. ¶ 6. *See also* DIP Motion Ex 1.

11.     This evidence is more than adequate to demonstrate a sound business justification for the Sale Timeline. *In re Trans World Airlines, Inc.*, No. 01-00056 (PJW), 2001 WL 1820326, at *7 (Bankr. D. Del. Apr. 2, 2001) (approving bidding procedures with sale timeline of less than 60 days where debtors' restructuring options were limited and it was running out of operating funds).

---

[7] The *Declaration of Brian Ayers in Support of Debtor's Emergency Motion for Entry of Interim and Final Orders (A) Authorizing Debtor to Obtain Post-Petition Financing and to Grant Security Interests and Super-Priority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(C) And 364(D); (B) Utilize Cash Collateral and Pay Certain Related Fees and Charges; (C) Modifying the Automatic Stay Pursuant To 11 U.S.C. § 362; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (the "Ayer DIP Declaration") [Docket No. 58] was filed in support of the *Debtor's Emergency Motion for Entry of Interim and Final Orders (A) Authorizing Debtor to Obtain Post-Petition Financing and to Grant Security Interests and Super-Priority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(C) And 364(D); (B) Utilize Cash Collateral and Pay Certain Related Fees and Charges; (C) Modifying the Automatic Stay Pursuant To 11 U.S.C. § 362; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (the "Debtor's DIP Motion") [Docket No. 57].

### B. The Sale Process Is Robust.

12. Contrary to Orthogon's *ipse dixit* that seven weeks is "plainly insufficient amount of time to conduct such a process," the evidence demonstrates that a robust process is well underway, and there is no evidence that additional time is necessary.

13. Indeed, beginning June 12, 2025, Rock Creek has reached out to 200 potential interested bidders, received NDAs from 8 parties and 7 parties are conducting active diligence. Ayers Decl. ¶¶ 9, 10. One party has submitted a stalking horse proposal, which the Debtor is hopeful can be finalized by July 2, 2025, the proposed Stalking Horse Designation Deadline. *Id.* ¶ 8. Based on activity to date, the Debtor has reason to believe there may very well be a competitive, value maximizing auction process.

14. Orthogon's accusation that the "transaction involving the Potential Acquirer may be designed to be a foregone conclusion," is not only patently false—it is belied by the evidence of the activity underway with respect to the marketing and sale process.

\* \* \* \*

15. Therefore, for all of the foregoing reasons, the Sale Timeline should be approved, and Orthogon's objection to the Sale Timeline overruled.

## II. Orthogon Should Not Be Granted Consultation Rights.

16. Orthogon argues it must be granted Consultation Party status with respect to "all impactful decisions related to any sale" because it is the Debtor's largest unsecured creditor and largest holder of common and preferred stock in the Debtor. Obj. ¶ 2. [8] Orthogon specifically seeks Consultation Party status with respect to:

- Selection of Stalking Horse Bidder(s)

---

[8] Moreover, one day before its objection was filed, Orthogon's board representative, Dr. Rishi Ganti, resigned from the board. Orthogon failed to appoint a replacement board representative as it is permitted to do under its shareholders agreement with the Debtor.

- Determination of Qualified Bids
- Determination of Highest or Otherwise Best Bid
- Determination of Back Up Bid
- Modification of Bid Procedures.

*Id.* ¶ 17.

17. Orthogon's request should be denied because there is no legal basis to require any party to be a consultation party in connection with a sale. Absent unusual circumstances, consultation rights are typically limited to estate fiduciaries (i.e., official committees) and secured lenders.

18. Here, the absence of a creditor's committee is countered by the fact that there is indisputably an independent third-party fiduciary ensuring this Chapter 11 Case and the sale process maximizes value. The Restructuring Committee—comprised of two independent directors with decades of experience in bankruptcy and restructuring matters—has the sole, exclusive authority to make decisions on behalf of the Debtor with respect to its Chapter 11 Case and the sale of its assets. This is not a process run by insiders for the benefit of insiders; this is a process run by independent restructuring professionals, clearly intended to maximize value for the benefit of the Debtor's estate and its stakeholders (including Orthogon).

19. The Debtor therefore submits that Orthogon's request to be granted Consultation Party status should be denied.

### III. Orthogon's Remaining Arguments Are Premature.

20. The remaining arguments raised in the Objection are not ripe for adjudication, as they are sale objections that have no bearing on whether the relief sought in the Bidding Procedures Order should be granted.

21. Orthogon argues that insider sales are subject to heightened scrutiny, and speculates about the terms of a sale transaction that is not before this Court.[9] Obj. ¶¶ 8-10. Orthogon also argues that the Debtor should not be permitted to sell certain estate claims and causes of action. Obj. ¶ 16. Unless and until a sale is presented to the Court for approval, there is nothing for the Court to consider on either of these points.

22. Contrary to Orthogon's contentions in the Objection, the Debtor intends to maximize the value of its assets for the benefit of the estate, the Debtor's creditors, and other stakeholders.

## **CONCLUSION**

WHEREFORE, for the reasons set forth in the Bidding Procedures Motion and this Reply, the Debtor respectfully requests that the Court overrule the Objection and grant the Motion and such other relief as is necessary and proper.

---

[9] Even *if* the Debtor sought approval of a transaction that *might* be subject to heightened scrutiny, any transaction presented to this Court is subject to exclusive approval by the Restructuring Committee.

| | |
|---|---|
| Dated: June 29, 2025<br>Wilmington, Delaware | POTTER ANDERSON & CORROON LLP<br><br>/s/ Aaron H. Stulman<br>Aaron H. Stulman (No. 5807)<br>Brett M. Haywood (No. 6166)<br>James R. Risener III (No. 7334)<br>Ethan H. Sulik (No. 7270)<br>1313 North Market Street, 6th Floor<br>Wilmington, Delaware 19801<br>Tel: (302) 984-6000<br>Facsimile: (302) 658-1192<br>Email: astulman@potteranderson.com<br>       bhaywood@potteranderson.com<br>       jrisener@potteranderson.com<br>       esulik@potteranderson.com<br><br>- and -<br><br>GOODWIN PROCTER LLP<br>Howard S. Steel (admitted *pro hac vice*)<br>Stacy Dasaro (admitted *pro hac vice*)<br>Kizzy L. Jarashow (admitted *pro hac vice*)<br>James Lathrop (admitted *pro hac vice*)<br>The New York Times Building<br>620 Eighth Avenue<br>New York, New York 10018-1405<br>Tel: (212) 813-8800<br>Facsimile: (212) 355-3333<br>Email: hsteel@goodwinlaw.com<br>       sdasaro@goodwinlaw.com<br>       kjarashow@goodwinlaw.com<br>       jlathrop@goodwinlaw.com<br><br>*Proposed Counsel for Debtor and Debtor-in-Possession* |